**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 96-10978
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTINE T. McDOWELL,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

March 25, 1997

Before WISDOM, KING, and SMITH, Circuit Judges.

WISDOM, Circuit Judge.

In accordance with a written plea agreement, Christine T. McDowell pleaded guilty to making, uttering, and possessing counterfeit securities in violation of 18 U.S.C. § 513(a). McDowell appeals the district court's decision to depart upwards from the sentencing guidelines. We affirm.

The defendant was employed as a bookkeeper by David M. Munson, Incorporated (DMMI) from February 1994 to October 1995. In the course of performing this job, it fell upon her to pay the

1

bills of the company using DMMI checks. Between May 13, 1994 and October 15, 1995, McDowell altered over $290,000 of DMMI checks and deposited the funds into her accounts at Bank United Texas in Dallas. The entirety of these funds was spent on personal expenses. According to McDowell, the money enabled her to purchase clothes for her children, go on vacations, renovate her home, and repair her automobile.

In the presentencing report, the probation officer recommended a base offense level of six under § 2F1.1(a) of the sentencing guidelines, an eight level increase under § 2F1.1(b)(1)(I) because the amount embezzled exceeded $200,000 but was less than $350,000, a two level increase under § 2F1.1(b)(2) because the offense involved more than minimal planning, a two level increase under § 3B1.3 for McDowell's role in the offense, no adjustment for obstruction of justice, and a three level decrease under §§ 3E1.1(a)and (b)(1) for acceptance of responsibility. Based on these recommendations, the probation officer calculated a total offense level of 15 and a level I criminal history category. These figures yield an imprisonment range of 18 to 24 months. McDowell had no objection to the presentencing report.

During a sentencing hearing on July 8, 1996, McDowell informed the court that she had been caught embezzling from a previous employer only two months before she began working for DMMI. McDowell stated that the total amount embezzled was $10,000 and acknowledged that her prior conduct was exactly the

2

same as that of the instant offense.  No criminal prosecution resulted  because the defendant's mother made restitution to the employer.  The court informed the defendant that it was considering an upward departure because of McDowell's prior conduct.

At the third sentencing hearing[1] on July 29, 1996, the court asked McDowell to provide reasons why it should not depart upwards.  Counsel for the defendant argued in favor of leniency, but did not directly address the issue of an upward departure. The district court adopted the recommendations of the PSR, yielding an offense level of 15 and a level I criminal history category.  The court then departed upwards from the guidelines by increasing McDowell's offense level to 19 and sentencing her to 37 months imprisonment.  McDowell did not object to the district court's method of calculating the upward departure, to the extent of the upward departure, or to the reasons given for the departure.

### Standard of Review

Although failure to preserve an alleged error through contemporaneous objection generally precludes our consideration of that issue on appeal, Federal Rule of Criminal Procedure 52(b) allows us to consider plain errors or defects affecting substantial rights.  Under this rule, a court may correct

---

[1]   A second hearing was held on July 22, 1996.  At that hearing, counsel for the defendant informed the court that McDowell was under the influence of drugs (phenobarbital) and was not competent to proceed.  The court remanded the defendant to the custody of the U.S. Marshalls and set sentencing for July 29, 1996.

3

forfeited errors only when the appellant shows that: (1) there is an error, (2) the error is clear or obvious, and (3) the error affects the substantial rights of the defendant.[2]  If these factors are established, the decision to correct the forfeited error is within the court's sound discretion.[3]  We may decline to exercise that discretion unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.[4]

### *Departure Under Which Section?*

The government urges that the district court's upward departure was appropriate and warranted under § 5K2.0 of the sentencing guidelines.  McDowell, on the other hand, maintains that the departure from the guidelines was erroneous under the requirements imposed by this court for departure pursuant to § 4A1.3 of the guidelines.  McDowell's brief makes absolutely no mention of § 5K2.0.

The roots of this controversy lie in the oral comments of the district judge at sentencing.  As the government acknowledges, the district court mentioned § 4A1.3 in discussing the reasons for its departure.  The court did not state, however, that the departure was being made under that section.  On the contrary, the court's written judgment clearly states that the

---

[2]    United States v. Calverly, 37 F.3d 160, 162-64 (5th Cir.) (en banc), cert. denied, 115 S.Ct. 1226 (1995); United States v. Olano, 507 U.S. 725, 731-37 (1993).

[3]    Olano, 507 U.S. at 735-36.

[4]    Id.(quoting United States v. Atkinson, 297 U.S. 157 (1936)).

4

court departed from the guidelines under § 5K2.0 alone.

We are mindful of the long line of cases holding that in the event of a conflict between an oral pronouncement of judgment and a written judgment the oral pronouncement controls.[5] We are similarly cognizant of the rule that an ambiguity between written and oral pronouncements is to be resolved by examining both statements to arrive at the court's intent.[6] In the present case, however, we find neither a conflict nor an ambiguity. Rather, we observe a definite statement in the written judgement that the departure was made under § 5K2.0. The record reflects merely an offhand reference during the sentencing hearing to the comments accompanying § 4A1.1 regarding justifications for departures under § 4A1.3.[7] Accordingly, we conclude that the court departed upwards under § 5K2.0.

***Justifications for the Departure***

We turn now to determine whether the reasons given for the departure under § 5K2.0 amounted to clear error by the district court.

The purpose of § 5K2.0 is to allow a district court to deviate from the sentencing guidelines where "there exists an

---

[5] See e.g. Scott v. United States, 434 F.2d 11 (5th Cir. 1970); Ward v. United States, 508 F.2d 664 (5th Cir. 1975); United States v. Chagra, 669 F.2d 241 (5th Cir.) cert. denied 459 U.S. 846 (1982); United States v. Shaw, 920 F.2d 1225 (5th Cir.) cert. denied 500 U.S. 926 (1991).

[6] See e.g. Scott, 434 F.2d at 20; Schurmann v. United States, 658 F.2d 389 (5th Cir. Unit A 1981).

[7] As we address below, the district court's recognition that § 4A1.3 might apply to the defendant's conduct does not render a departure under § 5K2.0 erroneous where the court determines that some aspect of the conduct in question places it outside the range of cases considered by the Sentencing Commission in drafting § 4A1.3.

aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."[8]  As the Supreme Court recently noted:

> . . .[T]he Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes.  When a court finds an atypical case, one to which a particular guideline linguistically applies but

where conduct significantly differs from the norm, the court may consider whether a departure is warranted.[9]

The statements of the district court at sentencing indicate that the court identified two factors that placed McDowell's case outside the "heartland".[10]  The court first addressed the high probability of recidivism based on McDowell's prior extortionist conduct: "I believe that this conduct, which is not taken into consideration by the guidelines adequately. . .indicates a greater likelihood of recidivism on your part, inasmuch as it is precisely the same conduct."  The problem of prior uncharged

---

[8]     U.S. SENTENCING GUIDELINES MANUAL § 5K2.0 (1995).

[9]     Koon v. United States, 116 S.Ct. 2035, 2044 (1996) (internal quotations omitted).

[10]    The written judgment of the court indicates that the departure was based on the "likelihood of recidivism based on similar prior offense conduct which did not result in prosecution USSG § 5K2.0".  No mention is made of any other reason.

6

conduct is squarely addressed by § 4A1.3 of the guidelines.[11]
That section allows for departure from the guidelines where
"reliable information indicates that the criminal history
category does not adequately reflect the seriousness of the
defendant's past criminal conduct or the likelihood that the
defendant will commit other crimes. . . . Such information may
include. . .prior similar adult criminal conduct not resulting in
a criminal conviction". Although this section applies
"linguistically" to McDowell's case, the district court found
aspects of this case atypical. The court stated:

> [Y]ou have uncharged conduct here that is not taken
> into consideration in any way. And the thing that
> strikes me is it is for exactly the same thing, exactly
> the same offense. You embezzled from an employer you
> were keeping books for. You were caught on the first
> one to give any person of a normal conscience a chance
> to be remorseful, certainly that would make an
> impression, I think, on most individuals that are
> caught, their family gets involved and they bail them
> out of trouble. They dodge the bullet, if you will,
> not having to go to jail and then it makes such an
> impression that two months later you're back out doing
> it again.

The court, in essence, made a finding that particular aspects of
this prior conduct -- it's proximity to the charged offense and

---

[11]    Indeed, this likely explains the courts reference to § 4A1.3 at the sentencing hearing.

its similarity to the conduct underlying the charged offense --
took it out of the "heartland" of cases considered by the
Sentencing Commission in drafting § 4A3.1.  As such, the court
concluded that departure under §5K2.0 was appropriate.  This
decision regarding the typicality of cases is better left to the
district court.[12] As <u>Koon</u> noted:

> . . .[T]he district court must make a refined
> assessment of the many facts bearing on the outcome,
> informed by it's vantage point and day-to-day
> experience in criminal sentencing. . . .  District
> courts have an institutional advantage over appellate
> courts in making these sorts of determinations,
> especially as they see so many more guidelines cases
> that appellate courts do.[13]

We find no clear error in the district court's conclusion that
the likelihood of recidivism, in the light of McDowell's prior
conduct, warranted an upward departure from the guidelines.

Nonetheless, we find troubling the district court's second
primary reason for the departure.  At the third sentencing
hearing, the court pressed McDowell to state specifically what
had become of the nearly $300,000 in embezzled funds.  The
defendant explained that she had nothing to show for it -- that
the money "was just spent".  The court clearly was suspicious of

---

[12]     Section 5K2.0 specifically states that "the court may depart from the guidelines, even though the reason for the departure is taken into consideration in the guidelines . . . if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.

[13]     <u>Koon</u>, 116 S.Ct. at 2046-2047.

this response.[14]  The judge went on to explain his
dissatisfaction with the available sentencing range, absent
departure, when viewed in the light of the large amount
embezzled.  The court stated:

> . . .Here's what just shocks my conscience.  The
> offense level in this matter by the guidelines is 15
> and the criminal history category is I, as I recall. .
> . .  That provides for 18 to 24 months.  If I gave you
> 24 months -- you stole $292,000 that I want to doubt
> real serious you're  going to have the wherewithal to
> pay back.  So in essence what you will accomplish, if I
> give you two years, is . . . you're in essence
> basically earning $145,000 a year. . . . So what Im
> saying is that giving you two years, I really question
> how much punishment that is, inasmuch as you have had
> the benefit, the use and enjoyment, as well as your
> family, of $292,000 of Mr. Munson and his family's
> money.  So I'm going to sentence you at an offense
> level of 19, departing upward four levels because of
> the similar uncharged offense . . . and I'm going to
> sentence you to 37 months.  So now you're making 70 or

---

[14]  The court noted that there is
> . . .a quarter of a million you can't account for or won't
> account for.  I have no confidence that you don't have the money
> squirreled away somewhere. . . .  There's no one in this room who in
> an 18-month period could spend a quarter of a million dollars.  You
> know, maybe if we had Ross Perot in here or something he could drop
> a quarter of a million dollars and not know where it went.  And so
> you're telling me 'I have no idea what I did with that $250,000, but
> I spent this other 50 on these various things', I don't believe it.

80 thousand a year while you sit in jail.

This reasoning cannot be upheld.  Section 5K2.0 was intended to allow departure based on a character or circumstance that places a case outside the "heartland" of cases considered by the Sentencing Commission.  However, as stated in the commentary to section 5K2.0, "In the absence of [such a character or circumstance], a sentence outside the guideline range is not authorized.  For example, **dissatisfaction with the available sentencing range or preference for a different sentence than that authorized by the guidelines is not an appropriate basis for a sentence outside the applicable guideline range.**"[15]  We cannot describe the above reasoning of the district court as anything but dissatisfaction with the available sentencing range.  Consequently, the court's reasoning is erroneous.

Despite the court's error in departing based on its own dissatisfaction with the available sentence, remand is not required to correct this error.  Remand is required *unless* we find that the district court would have imposed the same sentence absent reliance on the improper factor.[16]  Here, the district court had the authority to make the departure based only upon the likelihood of recidivism.  Indeed, the court's written judgment reflects this very conclusion.  As such, although the court

---

[15]   U.S. SENTENCING GUIDELINES MANUAL § 5K2.0 commentary at 311 (1995) (emphasis added).

[16]   Koon, 116 S.Ct. at 2053-54.  See also United States v. Stout, 32 F.3d 901 (5th Cir. 1994) (holding that where a sentencing judge offers both acceptable and unacceptable reasons for  a departure, any error is harmless).

erred, we find the error to be harmless.

### *Extent of the Departure*

The appellant next asserts that the extent of the departure constituted plain error.  An upward departure should be affirmed if the district court provides acceptable reasons for the departure and the extent of the departure was reasonable.[17]  This circuit does not, however, require a district court to state with particularity the reasons for the extent of a departure.[18] Viewing the record as a whole, we cannot say that the departure in this case was unreasonable.  Accordingly, we find no reversible error in the district court's upward departure from the sentencing guidelines.

**AFFIRMED.**

---

[17]  <u>Lee</u>, 989 F.2d at 182.

[18]  <u>United States v. Huddleston</u>, 929 F.2d 1030, 1031 (5th Cir. 1991).