# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

––––––––––––––

No. 01-20726

––––––––––––––

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JAMES WILLIAM DENNIS,

Defendant-Appellant.

––––––––––––––––––––

Appeal from the United States District Court
for the Southern District of Texas
H-00-CR-819-ALL

––––––––––––––––––––

June 11, 2002

Before KING, Chief Judge, SMITH and PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

James Dennis pleaded no contest to fifteen counts of theft from an organization receiving federal funds and twelve counts of theft of public money. The district court made a two-level upward departure because Dennis's theft inflicted nonobvious, indirect financial harms and directly tainted a nonprofit organization's reputation. Dennis now argues that the guidelines discourage counting consequential, tangible harms toward the loss calculation, even through departures.

Dennis did not make this argument to the district court. He admits that court could lawfully impose an identical sentence on remand based only on the harm to reputation. We conclude that the district court did not commit plain error.

I.

Dennis worked as vice president for Sheltering Arms Senior Services, Inc. ("SASS"), a nonprofit organization administering grants from various federal agencies. The Texas Department of Housing and Community Affairs and the Harris County Community Development Department contracted with SASS to provide services for the elderly. Dennis ordered and tracked equipment such as heaters and air conditioners.

In April 1999, SASS learned of inventory irregularities and began reviewing its purchases and installations. SASS discovered that Dennis had contracted, submitted, and approved payments to South Texas Supply Company ("STSC"). Dennis had manually delivered payments to the vendor, which was not located at the address listed in the file.

In 1994, Dennis had registered STSC as an unincorporated business and listed himself as the owner. SASS did not know that Dennis owned the vendor or had used STSC to provide heaters and air conditioners, in violation of SASS's conflict of interest policy. From October 1994 through April 1995, Dennis had submitted thirty-three fraudulent invoices paid to STSC, totaling $334,679.48.

Dennis pleaded no contest to fifteen counts of theft from an organization receiving federal funds, 18 U.S.C. § 666, and twelve counts of theft of public money, 18 U.S.C. § 641. Based on the 2000 sentencing guidelines, the Presentence Report ("PSR") recommended increasing Dennis's base offense level of four by ten levels because the loss was between $250,000 and $300,000; a two-level increase because the offense involved more than minimal planning; and a two-level increase for abuse of a position of public or private trust. These increases yielded a total offense level of 18. Dennis's criminal history category was I, yielding a guideline range of 27 to 33 months.

The PSR recommended an upward departure for two reasons. First, Robert Phillips, the president of SASS, explained that SASS sustained additional costs not included in the original loss calculation: $160,000 in staff time assessing the total financial damage, $109,500 in audit fees, and $11,413 for Dennis's unapproved equipment storage fees. The PSR found that these losses fell outside U.S.S.G. § 2B1.1's definition of loss and 18 U.S.C. § 3663A's statutory definition of restitution. Second, Phillips stated that SASS's reputation and fundraising suffered because of media reports of Dennis's criminal conduct. SASS is an agency of the United Way, and the media publicized the theft just as a United Way fundraiser began. Phillips averred that Dennis's crime harmed the United Way's and SASS's public image, lowering donations.

Dennis filed objections to the PSR, including an objection to its recommendation for an upward departure. The district court, relying on a comment to § 2B1.1, departed upward because the guidelines did not adequately capture the tangible or intangible harms SASS had suffered. The court noted that the tangible, consequential harms totaled at least $281,000, but the court did not rely on the entire amount to depart upward; it departed upward by two levels for a total offense level of twenty and a corresponding guideline range of 33 to 41

2

months. The court sentenced Dennis to concurrent 41-month prison terms on each count, three years of supervised release, a special assessment of $2,600, and restitution of $206,759.87.

## II.

Ordinarily we review for abuse of discretion a decision to depart from the guidelines. *Koon v. United States*, 518 U.S. 81, 98 (1996); *United States v. Nevels*, 160 F.3d 226, 229 (5th Cir. 1998). A decision to consider an impermissible factor is legal error, which we review *de novo*. *United States v. Reyes*, 239 F.3d 722, 744 (5th Cir.) ("Whether a factor is a permissible basis for departure is a question of law we review *de novo*."), *cert. denied*, __ U.S. __, 122 S. Ct. 156, *and cert. denied*, 533 U.S. 961 (2001).

Dennis, however, failed to raise his current argument in the district court. He made three arguments to that court. First, in his written objections to the PSR, he contended that there was no causal connection between his criminal conduct and the auditing, staff, reporting, or fundraising costs. Second, at the sentencing hearing, he claimed that the district court lacked a reliable standard or measure for the indirect costs created by his theft. For example, he accused the accounting firm of tabulating the audit costs inaccurately. Third, he argued that SASS only incurred costs typical to all "federal government program type cases," so the district court could not reasonably conclude that the guidelines had not taken the full costs into account.

On appeal, Dennis contends only that courts should not depart upward from § 2B1.1's loss table on the basis of consequential financial harms. His argument on appeal bears no relation to any of the arguments he made to the district court. None of his initial objections to the sentence informed the district court that relying on consequential, financial harms was problematic. We therefore consider these arguments waived and review the sentence only for plain error.[1]

Under plain error review, the defendant must show (1) error (2) that is plain and (3) affects substantial rights.[2] Even if the defendant establishes all three factors, we retain the discretion to refuse to correct the error, *United States v. McDowell*, 109 F.3d 214, 216 (5th Cir. 1997), and will not exercise our discretion to correct it unless it seriously impairs the fairness, integrity, or public reputation of judicial proceedings. *Id.*

Dennis admits that the district court could permissibly depart upward for the intangible harm caused to United Way's reputation. The

---

[1] *United States v. Izaguirre-Losoya*, 219 F.3d 437, 441-42 (5th Cir. 2000) (finding plain error review applicable where defendant failed to raise objection in district court), *cert. denied*, 531 U.S. 1097 (2001); *United States v. Ocana*, 204 F.3d 585, 588 (5th Cir.) ("Failure to object to either the PSR or the district court's sentence results in review for plain error."), *cert. denied*, 531 U.S. 880 (2000); *United States v. Krout*, 66 F.3d 1420, 1434 (5th Cir. 1995) ("A party must raise a claim of error with the district court in such a manner so that the district court may correct itself and thus, obviate the need for our review.") (citation omitted).

[2] *United States v. Olano*, 507 U.S. 725, 736-37 (1993); *United States v. Calverley*, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc) ("[A]ppellate courts possess the discretion to decline to correct errors which do not "seriously affect the fairness, integrity, or public reputation of judicial proceedings.") (citation omitted).

district court noted that it did not rely on the full indirect and consequential financial harms for the upward departure. Assuming *arguendo* that the court erred by departing upward based on consequential financial harms, it could have imposed the same departure based on the intangible harm to United Way's reputation.[3] Under plain error review, where the district court could impose the same sentence on remand, we have the discretion to affirm on one of the district court's alternate grounds. We need not reject the legally flawed rationale and remand to see whether the court will impose the same sentence.[4]

On this basis, we affirm the upward departure based on the harm caused to SASS's and United Way's reputations. We do not reach the question whether the district court properly considered consequential, financial harms.

AFFIRMED.

---

[3] Two other circuits have affirmed upward departures based on the reputational harm caused to public or nonprofit institutions. *United States v. Robie*, 166 F.3d 444, 455-56 (2d Cir. 1999) (affirming upward departure where theft resulted in "the real but intangible loss inflicted in the form of embarrassment and the appearance of incompetence inflicted on the Postal Service"); *United States v. Medford*, 194 F.3d 419, 425 (3d Cir. 1999) (affirming departure based on intangible harms caused by theft of museum antiques and suffered by museum and members of general public).

[4] *United States v. Leonard*, 157 F.3d 343, 346 (5th Cir. 1998) ("In the sentencing context, this court has concluded that if the trial judge, on remand, could reinstate the same sentence, it will uphold the sentence imposed despite the trial court's error."); *United States v. Ravitch*, 128 F.3d 865, 869 (5th Cir. 1997) ("As we must uphold a sentence reviewed for plain error if the court could lawfully and reasonably reinstate it on remand, we address each of these bases for departure in turn."); *United States v. Brunson*, 915 F.2d 942, 944 (5th Cir. 1990) ("If the case were remanded the trial judge could reinstate the same sentence (assuming of course that he included a reasonable explanation for the departure). We can find no miscarriage of justice in the court's failure to apply Guidelines (continued...)

[4](...continued) § 3B1.3. Finding no plain error, we AFFIRM.").