IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 02-30048

---

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

        versus

RONALD GEORGE HOWARD,

                              Defendant-Appellant.

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

October 31, 2002

Before GARWOOD and CLEMENT, Circuit Judges, and RESTANI,* Judge.

PER CURIAM:**

        Ronald George Howard appeals his conviction and sentence for
violation of 18 U.S.C. § 228(a)(3), a subsection of the Child
Support Recovery Act (CSRA).  We affirm.

**Facts and Proceedings Below**

---

        *The Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by
designation.

        **Pursuant to 5TH CIR. R.47.5 the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

On September, 18, 1997, the Juvenile and Domestic Relations District Court of Prince William County in the State of Virginia ordered Howard to pay child support to Patricia Howard for the benefit of his three minor children, Jennifer Marie, Christopher, and Brandon Thomas, over whom Ms. Howard had, and continued to have, custody. The order required $300 per month in support per child until each child reached 18 years old, except that support for Jennifer Marie continued for six months after her 18th birthday. Howard later moved to Arizona and Florida. Ms. Howard and the children moved to Louisiana around the time the couple separated and resided there between January 1, 1999 and April 14, 2001, the period charged in the indictment. As of the trial date, the youngest child, Brandon Thomas, was 15, and the $300 per month obligation continued to accrue.

On May 25, 2001, Howard was indicted for violation of 18 U.S.C. § 228(a)(3), a subsection of the Child Support Recovery Act (CSRA), which provides criminal penalties for

"Any person who –

3) willfully fails to pay a support obligation with respect to a child who resides in another State, if such obligation has remained unpaid for a period longer than 2 years, or is greater than $10,000."

Howard sought dismissal of the indictment, alleging that the CSRA exceeds the federal commerce power. The district court denied that motion (and a similar one made post-verdict).

The government introduced evidence at trial showing that

2

Howard was a computer systems analyst and programmer, who earned more than $58,000 in 1999 and $63,000 in 2000, as well as evidence that Howard repeatedly promised to pay the support he owed, but later failed to do so.  As of the date of sentencing, Howard owed $84,535.51 in child support.  During the two years and four months charged in the indictment, Howard made no child support payments.  The jury returned a guilty verdict.

The district judge sentenced Howard to the statutory maximum of twenty-four months' imprisonment.  Because there are not sentencing guidelines specifically applicable to the CSRA, the court applied the most analogous sentencing guideline, § 2B1.1 (Larceny, Embezzlement, and Other Forms of Theft).  The range set forth in this guideline is ten to sixteen months.  The government moved for an upward departure in accordance with Application Note 15 to § 2B1.1.  The court imposed an eight month upward departure in addition to the sixteen months authorized by the guideline for a total sentence of twenty-four months.

Howard filed a timely notice of appeal on December 28, 2001 challenging the constitutionality of the CSRA under the Commerce Clause and the permissibility of the court's upward sentencing departure.

**Discussion**

I.  Commerce Clause

We rejected a similar challenge to CSRA in *United States v.*

*Bailey*, 115 F.3d 1222 (5th Cir. 1997), and *Bailey* binds us absent an intervening contrary decision by the en banc court or the Supreme Court. *Brown v. United States*, 890 F.2d 1329 (5th Cir. 1989). Howard urges us to reexamine *Bailey* in light of *United States v. Morrison*, 120 S.Ct. 1740 (2002), and *Jones v. United States*, 120 S.Ct. 1904 (2000). We decline the invitation. *Bailey* expressly sustained the CSRA under the first and second of the categories of commerce clause power outlined in *United States v. Lopez*, 115 S.Ct. 1624 (1995), and *Bailey* expressly declined to address the third *Lopez* category of commerce clause power. *Bailey* at 1226. *Morrison*, by contrast, addressed only the third *Lopez* category. *Morrison*, 120 S.Ct. at 1749. *Jones* is likewise unavailing; it was decided as a matter of statutory construction, and it appears that the statute under consideration would have called for analysis under *Lopez* category three, not categories one or two. Accordingly, we reject appellant's commerce clause challenge to the CSRA on the basis of *Bailey*, which we are not free to reconsider.

II. Upward Sentencing Departure

The defendant also appeals the district court's upward sentencing departure. There is no sentencing guideline specific to the CSRA, but the commentary to the Contempt guideline, § 2J1.1,

mandates application of the most analogous guideline under § 2X51.[1]

It is not disputed that § 2B1.1 was properly applied, resulting in a base level of 4, with 8 points added because the support Howard failed to pay exceeded $70,000. It is also uncontested that with an offense level of 12 and a criminal history category of I, the defendant's guideline range was 10-16 months. The district court, however, departed upward an additional eight months for a total sentence of twenty-four months.

A sentencing court generally is required to apply the Guidelines Manual in effect at the time of sentencing. 18 U.S.C. § 3553(a)(4). However, where application of the guidelines in effect at sentencing would result in a more severe sentence than the version in effect at the time of the commission of the offense, the Ex Post Facto Clause of Article I of the Constitution requires use of the earlier version of the guidelines. *United States v. Rivers*, 50 F.3d 1126, 1129 (2d Cir. 1995); *United States v. Rodriguez*, 989 F.2d 583, 587 (2d Cir. 1993). The last date of the offense, as alleged in the indictment, is the controlling date for ex post facto purposes. U.S.S.G. § 1B1.11, comment. (n.2); *United States v. Gigante*, 39 F.3d 42, 50 (2d Cir. 1994).

---

[1]"For offenses involving the willful failure to pay court-ordered child support (violations of 18 U.S.C. § 228), the most analogous guideline is § 2B1.1 (Larceny, Embezzlement, and Other Forms of Theft). The amount of the loss is the amount of child support that the defendant willfully failed to pay. Note: This guideline applies to.....any offense under 18 U.S.C. § 228(a)(2) and (3)..." § 2J1.1, app. n.2.

Here, April 14, 2001 is the last date charged in the indictment and sentencing occurred on December 19, 2001. The 2001 Sentencing Guidelines went into effect on November 1, 2001. As such, we will assume that the defendant is entitled to have his upward departure set aside if it was improper under either the 2000 or 2001 edition of the Guidelines.

The 2000 Sentencing Guidelines provide simply that an upward departure may be warranted "in cases where the loss determined under subsection (b)(1) does not fully capture the harmfulness of the conduct." § 2B1.1, app. n.14.

The 2001 Sentencing Guidelines are more elaborate. They state in relevant part:

> "There may be cases in which the offense level determined under this guideline substantially understates the seriousness of the offense. In such cases, an upward departure may be warranted. The following is a non-exhaustive list of factors that the court may consider in determining whether an upward departure is warranted:
>
> (i) A primary objective of the offense was an aggravating, non-monetary objective. For example, a primary objective of the offense was to inflict emotional harm.
> (ii) The offense caused or risked substantial non-monetary harm. For example, the offense caused physical harm, psychological harm, or severe emotional trauma, or resulted in a substantial invasion of a privacy interest, (through, for example, the theft of personal information such as medical, educational, or financial records).
> (iii) The offense involved a substantial amount of interest of any kind, finance charges, late fees, penalties, amounts based on an agreed-upon return or rate of return, or other similar costs, not included in the determination of loss for purposes of subsection (b)(1).
> (iv) The offense created a risk of substantial loss

6

beyond the loss determined for purposes of subsection (b)(1).
(v) The offense endangered the solvency or financial security of one or more victims....."§ 2B1.1, app. n.15

In both versions of the guidelines, the Introduction instructs that district courts are authorized to depart from the sentence imposed by the guidelines in cases that feature "aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." U.S.S.G. Ch. 1 Pt. A (b) (2001)*; Koon v. United States*, 116 S. Ct. 2035, 2044 (1996).

In *Koon*, the Court held that a district court's sentencing departure "will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." *Id.* at 2046. The Court declared that a unitary abuse of discretion standard was to be used when reviewing departure decisions. *Id.* at 2047-48. The Court effectively rejected each of the multi-step approaches to reviewing sentencing departures that had been adopted by the various circuits and "collapsed" the steps into a single inquiry. *See United States v. Cali*, 87 F.3d 571, 579-80 (1st Cir. 1996) (acknowledging that *Koon* established a unitary abuse of discretion standard for reviewing departure decisions).

The Court noted, however, that even under this deferential abuse of discretion standard, a "district court by definition abuses its discretion when it makes an error of law." *Id.* at 2047.

7

A district court abuses its discretion, and incorrectly applies the guidelines, where it relies on an invalid departure ground. *Williams v. United States*, 112 S. Ct. 1112 (1992). "Whether a factor is a permissible basis for departure is a question of law we review *de novo*." *United States v. Reyes*, 239 F.3d 722, 744 (5th Cir. 2001), cert. denied sub nom.

In *Koon,* the Court outlined what factors a district court should take into consideration when confronted with the question of whether or not to depart in a particular case:

> "[A] sentencing court considering a departure should ask the  following questions:
>
> 1) What features of this case, potentially, take it outside the Guidelines' 'heartland' and make of it a special, or unusual, case?
> 2) Has the Commission forbidden departures based on those features?
> 3) If not, has the Commission encouraged departures based on those features?
> 4) If not, has the Commission discouraged departures based on those features?"

*Koon*, 116 S.Ct. 2035, 2045.

Ms. Howard's victim impact statement, which was before the court at sentencing, reflects that, as a result of appellant's failure to pay child support, her daughter could not attend college and that she had difficulty affording clothing for the family.  She suffered anger, anxiety, fear, grief, numbness, sleep loss, insecurity, trouble concentrating, chronic fatigue, and depression due to the absence of child support.  Under the 2001 Guidelines, this would implicate the encouraged factors: (ii) causing

8

substantial non-monetary harm and (v) endangering the solvency or financial security of one or more victims.  While the 2000 Guidelines offer less guidance, since the (b)(1) calculation is purely based on the monetary value of the loss, we cannot say that the trial court abused its discretion by finding that, in light of the kinds of non-monetary harms attested to by Ms. Howard, this calculation does not fully capture the harmfulness of the conduct. Moreover, taking the introductory comments into account, while it can be argued that Mr. Howard's conduct is regrettably not much different in kind than the typical deadbeat parent, the trial court's finding that it is different to a meaningful degree is not an abuse of discretion.

Furthermore, the Eighth Circuit has recognized that cases requiring application of the "most analogous" guideline under section 2X5.1 are "inherently out of the ordinary" and that district courts should have "freedom to fashion the appropriate sentence in these unconventional situations on a case by case basis." *United States v. Osborne*, 164 F.3d 434, 438 (8th Cir. 1999).  The Seventh Circuit expressed "serious[] doubt that a case in which a district court is required to apply the most 'analogous' guideline pursuant to U.S.S.G. § 2X5.1 can ever be found to fall within the 'heartland' of that guideline." *United States v. Leahy*, 169 F.3d 433, 441 (7th Cir. 1999).  While we decline to reach the question of whether this Court should similarly hold that there is

9

no heartland in CSRA cases, the fact that the Sentencing Commission did not specifically address failure to pay child support makes it less likely that they took into account the kind and degree of harm in this particular case.

The appellant, however, alleges that the district court departed upward simply because it disagreed with the guidelines. "Dissatisfaction with the available sentencing range or preference for a different sentence than that authorized by the guidelines is not an appropriate basis for a sentence outside the applicable guideline range." *United States v. McDowell,* 109 F.3d 214, 219 (5th Cir. 1997) (quoting U.S. Sentencing Guideline Manual § 5K2.0 commentary at 385 (2001)).

The appellant cites the following colloquy at sentencing:

"The Court: I think part of the problem is because the guidelines don't have a particular category for failure to pay child support, you are just tossed over into the general loss, financial loss category....
The Court: Mr. Howard, I think this may well be the first time I have upward departed from the guidelines since I have been here but, I think, it is very much justified. You obviously are a bitter person, you have a chip on your shoulder that is a mile high and that's the burden that your children shouldn't be bearing, whatever caused it is for you...
The Court: I think, frankly, before I realized that there was a statutory maximum, I had actually come to a sentence of three years. And the reason I came to that was because there were three children, not one child, and I thought a year for each child. Plus it has been three years since any money was paid off. And I was frankly disappointed to find out that my maximum is only twenty-four months, two years. I don't have any indication, Mr. Howard, that you really have any intention to pay this debt at all. And, frankly, I haven't seen in too many defendants a more belligerent attitude than the one I

10

have seen in you.  I think it's ashamed [sic] that your children are the ones that had to bear the consequences of your attitude.
Defendant: My attitude?
The Court: Yes, your attitude.
Defendant: She is the one that can't raise my kids.
The Court: And it's being demonstrated again right here for the record...
The Court: I find for the reasons that were stated in the government's Motion for an Upward Departure, as well as the reasons stated by the government today, and for the reasons I have stated, that the aggravating circumstances in this case are the kind and degree not adequately taken into consideration by the guidelines and, therefore, the upward departure is warranted."

The defendant relies entirely on a colloquy in *McDowell*[2] for the proposition that the district court's statements here manifest the same dissatisfaction and thus requires the sentence be invalidated, as it was in *McDowell*.  However, the cases are distinguishable.  First, the statement in this case was purely hypothetical, suggesting what the court might have done if no guidelines were applicable to this case.  Furthermore, the judge here did not state that the sentencing guideline "shocked her conscience."  That is

---

[2]In *McDowell,* the relevant statements in the sentencing colloquy were:

". . .Here's what just shocks my conscience. The offense level in this matter by the guidelines is 15 and the criminal history category is I, as I recall. . . . That provides for 18 to 24 months. If I gave you 24 months -- you stole $292,000 that I want to doubt real serious you're going to have the wherewithal to pay back. So in essence what you will accomplish, if I give you two years, is . . . you're in essence basically earning $145,000 a year. . . . So what Im saying is that giving you two years, I really question how much punishment that is, inasmuch as you have had the benefit, the use and enjoyment, as well as your family, of $292,000 of Mr. Munson and his family's money. So I'm going to sentence you at an offense level of 19, departing upward four levels because of the similar uncharged offense . . . and I'm going to sentence you to 37 months. So now you're making 70 or 80 thousand a year while you sit in jail." *McDowell,* 109 F.3d at 218.

quite different than the mere implication here that, were this court starting from scratch, it might have come up with guidelines that do not exactly mirror those in place. Although some of the statements here may not have been ideally worded, they do not rise to the level of demonstrating an unwillingness to follow the guidelines.

While some of the factors used by the district court in this case to justify its upward departure, such as the defendant's attitude, do not fall under 2B1.1, app. n.15 (i)-(v), none of these factors are among those factors that § 5H1.10 or any other provision prohibits as bases for departure (e.g. race, sex, national origin, creed, religion, socioeconomic status). Indeed, appellant does not assert any such prohibited factors were used. The Sentencing Commission specifically noted that it "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." 2001 U.S.S.G. ch. 1, pt. A, intro. comment. 4(b).

Even if this court were to find the trial judge's statements in this case manifested some dissatisfaction with the guidelines, the sentence should still be affirmed.[3]

---

[3]We note that the *McDowell* court concluded, "Despite the court's error in departing based on its own dissatisfaction with the available sentence, remand is not required to correct this error. Remand is required *unless* we find that the district court would have imposed the same sentence absent reliance on the improper factor. Here, the district court had the authority to make the departure based only upon the likelihood of recidivism. Indeed, the court's written judgment

12

The court here explicitly stated that its upward departure was based on "the factors stated in the government's Motion for an Upward Departure, as well as the reasons stated by the government today, and for the reasons I have stated." In advocating its Motion for Upward Departure at the sentencing hearing, the government told the court, "And if the court looks at the facts that are specific to this case, some of which I have already mentioned, you will see what the impact is on the victim of this particular crime which, I think, would require this Court to consider an upward departure from the Sentencing Guidelines." The government later directed the court's attention to the "victim's impact statement which was furnished to the Court by the former Mrs. Howard" in order to contrast the lifestyle she and her children were forced to live with that of the defendant. These facts on which the court relied in its upward departure go to the harmfulness of defendant's conduct and are indicative of a difference in the kind or degree of harm sustained in this particular case such that it cannot be said that the trial court abused its discretion.

In summary, it is certainly not shown that the trial court's sentence was *based* on dissatisfaction with the guidelines and, even if some unacted on, abstract dissatisfaction with the guidelines is

reflects this very conclusion. As such, although the court erred, we find the error to be harmless." *McDowell,* 109 F.3d at 219 (footnote omitted).

not an entirely implausible interpretation of a portion of the court's statements, there were sufficient reasons expressly relied upon by the court, both those not prohibited by the guidelines and those specifically encouraged by them, to support the upward departure.  No abuse of the district court's discretion or error of law has been demonstrated.

## Conclusion

Accordingly, the district court's judgment is
AFFIRMED.