IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-20178
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JONATHAN M. TAMPICO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

July 2, 2002

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before HILL,* JOLLY, and BENAVIDES, Circuit Judges.

BY THE COURT:

The Supreme Court of the United States, by order in No. 01-571, <u>Jonathan M. Tampico v. United States</u>, granted appellant's petition for writ of *certiorari*, vacated the judgment in the case, and remanded it to us for further consideration in the light of <u>Ashcroft v. Free Speech Coalition</u>, 122 S.Ct. 1389 (2002).

IT IS ORDERED that the captioned case be and it is hereby remanded to the United States District Court for the Southern District of Texas for further proceedings and disposition consistent with the aforesaid order of the Supreme Court.

_____

*Circuit Judge of the Eleventh Circuit, sitting by designation.

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-20178

_____

UNITED STATES OF AMERICA,

                                                        Plaintiff-Appellee,

                              versus

JONATHAN M. TAMPICO

                                                        Defendant-Appellant.

_____

Appeal from the United States District Court

for the Southern District of Texas

USDC No. 4:98-CR-485-1

_____

July 6, 2001

Before HILL,[**] JOLLY, and BENAVIDES, Circuit Judges.

PER CURIAM:[***]

Jonathan Tampico appeals his conviction and sentence for the possession, receipt and distribution of child pornography, in violation of 18 U.S.C. § 2252-2252A. Because the statute under which Tampico was convicted was constitutional, there was sufficient evidence to convict him, and there was no error in the sentence, we AFFIRM Tampico's conviction and sentence.

I

In 1989, approximately ten years before the conviction at issue here, Jonathan M. Tampico was convicted of sexually molesting a boy under the age of 14 years, and was sentenced to six years in prison in California. He was released in October 1992 on the condition that he not possess child pornography. Tampico's parole was revoked on September 12, 1995, after police discovered a large volume of child pornography at his residence. He was released again on February 23, 1996, when California authorities discovered

_____

[**]Circuit Judge of the Eleventh Circuit, sitting by designation.

[***]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

he had discharged his parole. Although the California district attorney's office intended to file state charges for the possession of child pornography, Tampico left California and moved to Texas, without informing either the California or Texas authorities of his new address. A television broadcast of "America's Most Wanted" on July 11, 1998, led to his arrest in Texas.

After Tampico's arrest, authorities seized a large volume of child pornography from Tampico's residence and storage shed, much of which Tampico had brought from California by U-Haul. Both the individual with whom Tampico was living, Jerome Ciolio, and another individual who had obtained child pornography from Tampico, Donald Sandberg, gave statements implicating Tampico in offenses relating to child pornography.

On December 9, 1998, Tampico was indicted for violations of the federal statute prohibiting child pornography and the sexual exploitation of children. 18 U.S.C. § 2252-2252A. Specifically, Counts One through Four of the indictment charged Tampico with, respectively, possession, receipt, distribution, and reproduction of child pornography involving the sexual exploitation of minors. Count Five dealt with the forfeiture of Tampico's property.

A bench trial on stipulated facts was conducted on September 17, 1999. Tampico admitted to possession of the evidence seized by the government, stated that Sandberg had obtained certain photographs from Tampico's computer, and stipulated that the videos

4

and photographs had been transported in interstate commerce.  The government also submitted evidence, through the testimony of an FBI agent, that Sandberg and Ciolino had told the FBI that Tampico had transported a great deal of the same child pornography from California.  Sandberg told the FBI that he was computer illiterate and that Tampico had printed the computer images off his computer for Sandberg.  After examining the photographs, a government expert, Dr. Sheila Lahoti, determined, through Tanner analysis, that the children appeared to be between the ages of nine and eighteen years.  The district court found Tampico guilty of Counts One, Two, and Three, that is, possessing, receiving, and distributing child pornography.  It found him not guilty of Count Four, reproducing child pornography.

Tampico submitted over sixty objections to the Presentence Investigation Report ("PSR").  The district court addressed each of these objections, some of which the court sustained, during the sentencing hearing on February 14, 2000.  The district court then sentenced Tampico to 60 months on Count One, and 360 months each for Counts Two and Three, to run concurrently.  The 360-month sentence represented an upward departure, based on the general policy statement of U.S. Sentencing Guideline § 5K2.0, from the Sentencing Guideline range of 210 to 262 months of confinement. The district court gave a number of reasons for granting the upward departure, including: Tampico's departure from California without notifying the authorities within days of his release from prison

for sexually assaulting a minor; the sheer volume of images involved; Tampico's continued exploitation of certain victims, even after incarceration; his involvement in the North American Man Boy Love Association ("NAMBLA"); and his extensive history of exploiting children.

## II

Tampico now appeals both his conviction and his sentence. He challenges the constitutionality of 18 U.S.C. § 2256(8), the sufficiency of the evidence for his conviction on the distribution count, the district court's upward departure on his sentence, and the district court's admission of the Presentence Investigation Report ("PSR") as evidence during the sentencing hearing.[1]

## A

Tampico first contends that the definition of child pornography under the Child Pornography Prevention Act, 18 U.S.C. § 2252A, is vague and overbroad, and prohibits protected speech in contravention of the First Amendment. Section 2256(8), which

---

[1] For the purpose of Supreme Court review, Tampico also contends that the district court erred in enhancing his sentence under 18 U.S.C. § 2252A(b)(1) for a prior conviction relating to sexual abuse, because the prior conviction was not alleged in the indictment. Tampico claims that this is unconstitutional after the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which found that sentencing factors must be proved beyond a reasonable doubt. Tampico recognizes, however, that this issue is foreclosed by the Supreme Court's decision in Almendarez-Torres v. United States, 523 U.S. 224, 247, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).

provides the definition of child pornography for all of the counts

against Tampico, defines child pornography as:

> any visual depiction, including any photograph, film, picture, or computer generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct where –
> (A)  the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct;
> (B)  <u>such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct</u>;
> (C)  such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct; or
> (D)  such visual depiction is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct.

19 U.S.C. § 2256(8)(emphasis added).  Tampico's challenge focuses

on the "appears to be" language in the statute.  He contends that

non-obscene, sexually explicit images that merely <u>appear to</u> depict

minors are protected speech under the First Amendment.

Tampico's First Amendment challenge to § 2252A is foreclosed

by our recent decision in <u>United States v. Fox</u>, 248 F.3d 394 (5th

Cir. 2001), which upheld the constitutionality of the "appears to

be" language.  In <u>Fox</u>, we found that § 2252A survived strict

scrutiny because of the government's compelling interest in

"shielding all children from sexual exploitation resulting from

child pornography."  <u>Id.</u> at 402 (quoting <u>United States v. Mento</u>,

231 F.3d 912, 920(4th Cir. 2000)).  We also found that the statute

was neither overbroad nor void for vagueness. <u>Fox</u>, 248 F.3d at 404-

07.  Thus, we reject Tampico's constitutional challenge to the

7

statute.

B

Tampico next claims that the evidence was insufficient to prove him guilty of Count Three, the distribution of child pornography under 18 U.S.C. § 2252(a)(2). In reviewing challenges to the sufficiency of the evidence, we generally hold the evidence sufficient if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Resio-Trejo, 45 F.3d 907, 910-11 (5th Cir. 1995). Because Tampico failed to make and renew a motion for a judgment of acquittal, however, our review is limited to plain error review. United States v. Willis, 38 F.3d 170, 178 (5th Cir. 1994). Under this standard, the conviction can be reversed only if there was a "manifest miscarriage of justice," such as a complete lack of evidence to support the verdict, or such tenuous evidence that the conviction itself was shocking. United States v. Villasenor, 236 F.3d 220, 222 (5th Cir. 2001) (citations omitted).

Tampico contends that the evidence was insufficient to convict him of distribution of child pornography because the court acquitted him of reproduction of child pornography. He argues that the government only offered evidence that Tampico distributed child pornography to Sandberg, by printing pictures off the computer. Tampico claims that a verdict that he did not reproduce the photographs is therefore inconsistent with a verdict that he distributed these photographs to Sandberg, because the reproduction

8

of the photographs off the computer was necessary for their distribution. He also claims that while a jury may render inconsistent verdicts, a court in a bench trial may not.

The claim on which Tampico was acquitted, however, was for "knowingly reproduc[ing] any child pornography for distribution through the mails, and in interstate and foreign commerce by any means, including by computer." 18 U.S.C. § 2252(a)(3). Because the reproduction claim required the government to show that Tampico reproduced child pornography for "distribution through the mails, or in interstate and foreign commerce by any means, including by computer," an acquittal on the reproduction claim does not mandate the inference that Tampico did not reproduce child pornography. Tampico's conviction on the distribution charge under § 2252A(a)(2), on the other hand, did not require proof of an intent to distribute through the mails or in interstate commerce; it required proof that Tampico distributed materials containing child pornography that had "been mailed, shipped, and transported in interstate and foreign commerce by any means, including by computer." 18 U.S.C. § 2252A(a)(2)(a),(b). Thus, Tampico's acquittal on the charge of reproducing child pornography did not automatically require acquittal on the charge of distributing child pornography. The court reasonably could have found that Tampico reproduced child pornography to distribute, not in interstate commerce, but to Sandberg, who lived next door. The act of distributing the child pornography (which had been in interstate

9

commerce) to Sandberg could then form the basis for the distribution charge.

Because there is evidence that Tampico knowingly distributed child pornography to Sandberg, and there was evidence that the child pornography had been in interstate commerce, Tampico's conviction is not a manifest miscarriage of justice. The evidence is sufficient to support the district court's verdict on Count Three.

C

Tampico next contends that the district court abused its discretion by departing upward on Tampico's sentence for Counts Two and Three to 360 months from the sentence guideline of 210 to 262 months. Tampico contends that the district erred by considering (1) evidence on the quantity of pornographic materials when the exact quantity was unclear, (2) factors that had already been taken into account under the guidelines, and (3) Tampico's membership in NAMBLA. He also argues that the district court failed to give him notice that it was planning to consider certain facts as grounds for upward departure.

We review the district court's upward departure from the sentencing guidelines for abuse of discretion. United States v. Route, 104 F.3d 59, 64 (5th Cir. 1997). "[W]e will affirm an upward departure if (1) the court gives acceptable reasons for departing, and (2) the extent of the departure is reasonable." Id. Upward departure is justified when the case is atypical, and does

10

not fall into the "heartland" of cases embodied by the sentencing guidelines. United States v. Winters, 174 F.3d 478, 482 (5th Cir. 1999). More specifically, the sentencing court may depart from the guidelines if it finds an aggravating circumstance not adequately taken into account by the guidelines, or if unusual circumstances render the guideline level insufficient. Id. The district court's determination is entitled to substantial deference because of the district court's particular competence to determine whether a case is ordinary or unusual compared to the vast majority of cases. Id.

If the district court departs from the Sentencing Guidelines for reasons not included in the PSR or other presentencing submissions, it must give the parties notice and specifically identify the grounds for an upward departure. United States v. Nevels, 160 F.3d 226, 231 (5th Cir. 1998). Because Tampico did not object to the lack of notice in the district court, his allegations of lack of notice are reviewed for plain error. See Fed. R. Crim. P. 52(b); Nevels, 160 F.3d at 231. Even assuming plain error, the sentence merits reversal only if the error affects the substantial right of the defendant or seriously affects the fairness of the proceeding. United States v. McDowell, 109 F.3d 214, 216 (5th Cir. 1997). The defendant has the burden of proving that the error was prejudicial. Nevels, 160 F.3d at 231.

In justifying its upward departure, the district court noted: first, that the sentencing guidelines did not adequately take into account the volume of pornographic images; second, that the

11

defendant had sexually molested children other than the victim that led to Tampico's first conviction; third, that Tampico had used the Big Brothers program to target children for sexual exploitation, and had therefore smudged the reputation of the Big Brothers program; fourth, that Tampico associated with NAMBLA, a group known to promote adult/child sexual relations, including the support of a foster home in Thailand for the sexual exploitation of children; and fifth, that the defendant's criminal history category was underrepresentative of the seriousness of his conduct and the likelihood of recidivism, as he failed to notify officials of his change of address when he moved to Texas.

1

Tampico first argues that the volume of pornographic material is not an appropriate ground for departure, because the district court did not actually know what volume of child pornography Tampico had in his possession. Tampico points to the fact that the district court sustained an objection to information in the PSR that deemed all of the visual depictions as child pornography, but overruled Tampico's objection to a paragraph in the PSR which described the amount of child pornography seized in California, even though that amount included as child pornography images that the other ruling suggested were not pornographic. Even if the district court could not determine the exact volume of child pornography, however, Tampico was clearly in possession of significant amounts of child pornography. The government's exhibit

list contained over 300 pages of details concerning materials recovered from Tampico. Tampico rented a U-Haul to move the materials from California to Texas. Because there was significant evidence for the district court to rely on in considering the volume of pornographic materials, the court did not abuse its discretion in considering the volume of materials in granting the upward departure.

2

Tampico next contends that the district court should not have considered the sexual abuse of other children because a five level increase had already been imposed under U.S. Sentencing Guideline § 2G2.2(b)(4) for a pattern of activity involving the sexual abuse or exploitation of a minor. Tampico refers to the commentary definition of pattern of activity to show that multiple minors and instances may be included in an increase under the Guideline.[2] U.S.S.G. § 2G2.2, cmt. n.1. The commentary to the guidelines, however, also notes that "an upward departure may be warranted if the defendant received an enhancement under subsection (b)(4) but that enhancement does not adequately reflect the seriousness of the

---

[2]Pattern of activity involving the sexual abuse or exploitation of a minor is defined as
> any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same or different victims; or (C) resulted in a conviction for such conduct.

U.S.S.G. § 2G2.2, cmt. n.1.

sexual abuse or exploitation involved." U.S.S.G. § 2G2.2, cmt. n.2. Tampico was convicted in California for sexual abuse of a minor. The individual that Tampico had been living with, Jerome Ciolino, told the authorities that he had been abused by Tampico as a minor. In addition, the PSR contained a report by the authorities that one of Tampico's victims alleged that Tampico had sexually assaulted children who were part of the Big Brothers program. Furthermore, the PSR included information on the California case, which had initially involved six boys. The additional charges were dropped when Tampico agreed to plead guilty. The evidence also included pictures of Thai boys sitting on Tampico's lap, and information that members of NAMBLA were arrested in Thailand for sexual abuse related to a foster home for boys developed for sexual exploitation. Given this evidence of numerous instances of sexual abuse, it was not an abuse of discretion for the district court to consider the sexual abuse of other children in granting the upward departure.

3

Tampico also contends that the district court should not have considered his membership in NAMBLA during sentencing. Tampico claims that using membership in NAMBLA as a reason for upward departure violated Tampico's rights to free speech and association. He also argues that the PSR indicated that NAMBLA's purpose is to advocate abolition of the age of consent laws, not to promote adult/child sexual relations.

14

Although "the Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment," such evidence should not be admitted indiscriminately. Dawson v. Delaware, 503 U.S. 159, 164 (1992). To be admissible at sentencing, evidence concerning associations must be sufficiently related to the issues involved. Boyle v. Johnson, 93 F.3d 180, 183-84 (5th Cir. 1996). For instance, in Dawson, the Supreme Court remarked that evidence of membership in a racist group would be relevant if elements of racial hatred were involved in the murder. Dawson, 503 U.S. at 166. See also Fuller v. Johnson, 114 F.3d 491, 498 (5th Cir. 1997); Boyle, 93 F.3d at 183-85;.

By arguing that NAMBLA's purpose is only to advocate the abolition of age of consent laws, Tampico is essentially claiming that his membership in NAMBLA is not related to his possession and distribution of child pornography or to his history of sexual exploitation of children. Some of the NAMBLA literature in Tampico's possession, however, specifically advocated Man/Boy sexual relationships. Even the name NAMBLA, that is, the North American Man Boy Love Association, suggests relationships between adults and children. Because Tampico's membership in NAMBLA may indicate the increased likelihood of recidivism or a lack of recognition of the gravity of the wrong, Tampico's association with NAMBLA is relevant to his intentions and his conduct. The fact

15

that Tampico is within his First Amendment rights in belonging to NAMBLA does not bar consideration of this evidence during sentencing.

4

Lastly, Tampico contends that he had no notice of the district court's intent to depart upward based on his sexual abuse of other children or his involvement in the Big Brothers program, and that departing California without informing local authorities was not a ground for departure included in the PSR. As noted earlier, Tampico did not object to the lack of notice in the district court, and we therefore review his contentions for plain error. Tampico's sentence merits remand only if Tampico demonstrates that a clear error affected his substantial rights or seriously affected the fairness of the proceeding.

Although neither his sexual exploitation of other children nor his involvement in the Big Brothers program were given as potential grounds for upward departure in the PSR, Tampico does not describe how notice would have affected the sentencing proceedings. Tampico claims he had no opportunity to respond to the allegation that he sullied the reputation of the Big Brothers program, but he does not explain how he would have responded. He challenges the court's finding that he "molested numerous children" by noting that "based on the information presented to the district court, two or possibly three children were involved." The information in the record described above (the pictures of Thai boys sitting on Tampico's

16

lap, the dropped charges of sexual abuse against six other boys, the testimony of one of Tampico's victims that Tampico had abused boys in the Big Brother program), clearly indicate that the district court would have departed upward even if Tampico had been given notice that these facts were going to be considered in an upward departure. Because Tampico has not carried his burden of showing that the lack of notice prejudiced him, we cannot find that the district court abused its discretion in considering these factors in its decision to depart upward.

Tampico also contends that the fact that he failed to notify officials of his change of address was not a ground suggested in the PSR for an upward departure, and thus should not have been considered in departing upward. The PSR recommended that Tampico's deliberate attempts to avoid arrest[3] be used as a ground for upward departure. The district court found that "the defendant's criminal history category is underrepresentative of the seriousness of his conduct and the likelihood that he would commit future crimes as he failed to notify officials of his change of residence which was required based on his conviction as a sex offender." Tampico does not seem to have broken the law by failing to notify officials of his change of residence. Given the evidence supporting the court's determination that the criminal history category was

_____

[3]These attempts including "changing his appearance, living in a residence obtained in another person's name, and renting a storage shed using a false name."

17

underrepresentative, however, we cannot find the district court's consideration of this factor prejudicial.

In sum, considering all of these facts together, the district court did not abuse its discretion in granting an upward departure of approximately three offense levels. The volume of pornographic images, the sexual molestation of numerous children, Tampico's membership in NAMBLA, and his smudging the reputation of the Big Brothers program take this case outside the heartland of ordinary cases. Viewing the record as a whole, we cannot say that the district court's departure was unreasonable. Thus, we find no reversible error in the district court's upward departure from the sentencing guidelines.

D

Finally, Tampico claims the district court erred by accepting as evidence the portions of the PSR to which Tampico objected. He contends that, for the portions of the PSR to which he objected, the government should either have been required to introduce evidence to support those facts, or the court should not have considered those facts in enhancing Tampico's sentence.

Generally, "a PSR bears sufficient indicia of reliability, such that a sentencing judge may consider it as evidence in making the factual determinations required by the Sentencing Guidelines." United States v. Huerta, 182 F.3d 361, 364 (5th Cir. 1999). Although Rule 32 of the Federal Rules of Criminal Procedure requires the court to resolve disputed issues of fact before

18

sentencing, the court can adopt facts contained in the PSR without inquiry as long as the "facts had an adequate evidentiary basis and the defendant does not present rebuttal evidence." United States v. Puig-Infante, 19 F.3d 929, 943 (5th Cir. 1994). Rebuttal evidence must consist of more than a defendant's objection; it requires a demonstration that the information is "materially untrue, inaccurate or unreliable." Huerta, 182 F.3d at 364 (citations omitted). Although Tampico objected to a number of factual issues in the PSR, he did not introduce any rebuttal evidence. Thus, the district court did not err in accepting the PSR as evidence.[4]

### III

For the reasons stated above, Tampico's conviction and sentence are                                          A F F I R M E D.

---

[4]Tampico urges us to reconsider our determination that the district court can adopt facts in the PSR as evidence in the light of the Eighth Circuit's holding that the PSR cannot be considered as evidence over the objection of the defendant. One panel of this court, however, cannot overrule the decision of another panel. United States v. Fowler, 216 F.3d 459, 460 (5th Cir. 2000).

19