**UNITED STATES of America,**
**Appellee,**

v.

**Edwin A. KANE, Defendant–Appellant.**

**Docket No. 05–2714–cr.**

United States Court of Appeals,
Second Circuit.

Argued: May 4, 2006.

Decided: June 19, 2006.

June 19, 2006.

---

Mark D. Hosken, Assistant Federal Defender for the Western District of New York (Jay S. Ovsiovitch, of counsel), Rochester, NY, for Defendant–Appellant.

Stephan J. Baczynski, Assistant United States Attorney (Kathleen M. Mehltretter, Acting United States Attorney for the Western District of New York, on the brief), Buffalo, NY, for Appellee.

Before MESKILL, STRAUB, and KATZMANN, Circuit Judges.

PER CURIAM.

Defendant–Appellant Edwin A. Kane appeals from a judgment entered in the District Court for the Western District of New York sentencing him principally to 24 months' imprisonment upon a plea of guilty to one count of equity skimming in violation of 12 U.S.C. § 1709–2. He contends that the District Court violated his First Amendment rights by weighing his prior published writings against the mitigating character evidence he offered at sentencing. He further maintains that his below-Guidelines sentence is unreasonable.

For seven years, Kane defrauded the Federal Housing Administration ("FHA") and the United States Department of Housing and Urban Development ("HUD"). He purchased homes carrying mortgages guaranteed by FHA or HUD, rented those properties to unsuspecting tenants, and then fraudulently transferred

the properties, along with the mortgage obligations, to third parties via fabricated warranty assumption deeds. After the false transfers, Kane continued to collect rent while the third parties defaulted on the mortgage obligations, causing HUD or FHA to foreclose on the homes and throwing into chaos the existing leaseholds. Through his scheme, Kane caused FHA and HUD to lose at least $700,000.

Although the Sentencing Guidelines established an advisory range of 30 to 37 months' imprisonment, Kane requested a probationary sentence. In support of his request, he submitted more than 35 letters from family, friends, and acquaintances attesting to the many aspects of his good character, including that he was a "fair and honest man, true to his word." Those letters, defense counsel asserted in Kane's sentencing submission, "provide an informative answer to the question: Who is Andy Kane?" Defense counsel also took the opportunity to answer the question himself, describing Kane as "a good friend" given to "random acts of kindness," who "accepted full responsibility for his fraudulent actions" and is "truly sorry for his actions." Kane further justified his request for probation by citing his need to care for his ailing wife, his own imperfect health, his age, and the corresponding slim chance that he would recidivate.

In response, the government submitted excerpts of books that Kane had authored. In those excerpts, Kane penned how-to advice on topics ranging from wife "training" to illegal real estate transactions. Specifically, he described how to convert "single-family dwellings into rooming houses without it being legal," a scheme that generated enough cash to fund his annual purchase of a new Cadillac Eldorado. He also gave advice on how to manipulate financial records so as to appear to qualify for subsidized housing, described running a fraudulent mail order scheme in which he "offered a service that didn't exist," provided tips on how to avoid a sexual harassment suit while displaying photographs of topless women in the office, and in a work titled "Mastering the Art of Male Supremacy: Training Techniques for the Home Front," set forth his philosophy of "training a wife," which eschewed "real violence" but endorsed the use of "a rolled up newspaper on the rump once in a while...."

The District Court acknowledged that the numerous character reference letters portrayed Kane's "acts of kindness[ and] acts of responsibility" and weighed those letters against Kane's writings. Ultimately, the Court concluded that Kane's published advice on running real estate and mail order schemes undercut his professed honesty, and his guide to "Mastering the Art of Male Supremacy" tempered the sincerity of his spousal devotion. For these and other reasons, the District Court rejected Kane's request for a probationary sentence. However, the Court imposed a non-Guidelines sentence of 24 months' imprisonment, six months below the bottom of the advisory range.

■ On appeal, Kane contends that the District Court violated the First Amendment by considering his expressive activity as part of its sentencing calculus, and that even in the absence of a constitutional violation, his sentence is unreasonable.

■ The First Amendment "does not erect a *per se* barrier" to the admission at sentencing of evidence regarding the defendant's beliefs or associational activity. *Dawson v. Delaware*, 503 U.S. 159, 165, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992). A sentencing court may consider such evidence so long as it is "relevant to the issues involved" in the sentencing proceeding. *Id.* at 164, 112 S.Ct. 1093; *see also United States v. Simkanin*, 420 F.3d 397,

418 (5th Cir.2005) (holding that court properly considered defendant's belief that the tax laws are invalid in sentencing defendant for income tax evasion); *Kapadia v. Tally,* 229 F.3d 641, 644–48 (7th Cir.2000) (holding that court properly considered defendant's anti-Semitic beliefs in sentencing defendant for attack on a Jewish community center); *United States v. Brown,* 479 F.2d 1170, 1174–75 (2d Cir.1973) (holding that court properly considered defendant's "expressed sympathy with the political and social views of the Black Panther Party" as relevant to whether defendant posed a future threat). Among other possible uses, a particular piece of evidence may be relevant to show motive, *see Barclay v. Florida,* 463 U.S. 939, 948–49, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) (plurality opinion), analyze a statutory aggravating factor, *see id.* at 949 & n. 7, 103 S.Ct. 3418, illustrate future dangerousness or potential recidivism, *see, e.g., United States v. Tampico,* 297 F.3d 396, 402–03 (5th Cir. 2002), or rebut mitigating evidence that the defendant proffers, *see generally Dawson,* 503 U.S. at 167, 112 S.Ct. 1093. Although a given piece of evidence may be relevant in many ways, the government may not offer proof of a defendant's "abstract beliefs" merely for the purpose of demonstrating that those beliefs, and by extension the defendant, are "morally reprehensible." *Id.* at 166–67, 112 S.Ct. 1093.

◼ Here, the District Court considered Kane's writings only to the extent that they rebutted his mitigating evidence. The First Amendment does not bar the government from putting the lie to a defendant's proof at sentencing. *See generally id.* at 167, 112 S.Ct. 1093 ("But just as the defendant has the right to introduce any sort of relevant mitigating evidence, the State is entitled to rebut that evidence with proof of its own."). We note, importantly, that the Court considered only evidence that refuted Kane's claims of honesty, charity, and tender devotion to his wife. By confining its analysis to the particular character issues that Kane raised, the Court avoided considering Kane's abstract beliefs for the irrelevant and impermissible purpose of showing general moral reprehensibility. *Cf. id.* at 166–67, 112 S.Ct. 1093. We also note that because much of Kane's writings concerned illegal real estate schemes, which related directly to his offense of conviction, the writings also "may indicate the increased likelihood of recidivism or a lack of recognition of the gravity of the wrong...." *Tampico,* 297 F.3d at 403.

Kane also claims that the books constituted a series of jokes and were meant only for entertainment purposes. The District Court determined otherwise, and we see no clear error in that finding. *See United States v. Snype,* 441 F.3d 119, 145 (2d Cir.2006) (noting that "we review a district court's findings of fact as they pertain to sentenc[ing] only for clear error"). Indeed, not every outlandish statement is jest; the fact that Kane wrote about real estate schemes and then actually executed one illustrates that his books reflect his reality. Accordingly, the District Court's consideration of Kane's writings did not violate the First Amendment.[1]

◼ Kane next contends that his sentence is unreasonable. The government urges that we lack jurisdiction to consider the reasonableness of Kane's sentence, and

---

1. Because we find no error, we need not decide whether Kane preserved his objection below, and if so, whether we should employ the harmless error standard of review. *See Dawson,* 503 U.S. at 169, 112 S.Ct. 1093 (Blackmun, J., concurring) (noting that "there is a substantial argument that harmless-error analysis is not appropriate for the type of error before us today" and the majority opinion does not conclusively resolve the issue).

that if we possess such jurisdiction, Kane's below-Guidelines sentence is a reasonable one. We recently rejected the government's jurisdictional argument in *United States v. Fernandez*, 443 F.3d 19, 25–26 (2d Cir.2006). Undeterred, the government contends that *Fernandez* is inconsistent with an earlier decision of this Court, *United States v. Colon*, 884 F.2d 1550 (2d Cir.1989), and entreats this panel to abide by *Colon*. We cannot do so.

In *Colon*, we held that "a decision not to depart from the applicable Guidelines range is not appealable." 884 F.2d at 1552. We premised our holding partly on the conclusion that 18 U.S.C. § 3742(a)(1), which authorizes a defendant to appeal a sentence "imposed in violation of law," could not be read to encompass a defendant's appeal of a within-Guidelines sentence "based on a claim that [his] sentence violates 18 U.S.C. § 3553(a)." *Colon*, 884 F.2d at 1553. Assuming that *Colon* addresses the issue raised by the government in this case—that we lack jurisdiction to consider a defendant's appeal of his below-Guidelines sentence on the ground that the term of imprisonment is unreasonable—we hold that this narrow interpretation of § 3742(a)(1) is irreconcilable with the Supreme Court's mandate that "the [Sentencing Reform] Act continues to provide for appeals from sentencing decisions (irrespective of whether the trial judge sentences within or outside the Guidelines range ...)." *United States v. Booker*, 543 U.S. 220, 260, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); *see also Veltri v. Bldg. Serv. 32B–J Pension Fund*, 393 F.3d 318, 327

(2d Cir.2004) ("[O]ne panel of this Court cannot overrule a prior decision of another panel unless there has been an intervening Supreme Court decision that casts doubt on our controlling precedent." (internal quotation marks omitted)).

As we reaffirm our recent conclusion in *Fernandez* against the government's reliance on *Colon*, we note that our position is consistent with every court of appeals to have considered the question.[2] *See, e.g., United States v. Jimenez–Beltre*, 440 F.3d 514, 517 (1st Cir.2006) (in banc); *United States v. Cooper*, 437 F.3d 324, 328 & n. 5 (3d Cir.2006); *United States v. Montes–Pineda*, 445 F.3d 375, 377–78 (4th Cir. 2006); *United States v. Mickelson*, 433 F.3d 1050, 1052–55 (8th Cir.2006); *United States v. Martinez*, 434 F.3d 1318, 1321–22 (11th Cir.2006). Further, we join at least two of our sister circuits in recognizing that *Booker* has abrogated or rendered inapplicable prior cases, such as *Colon*, that adopted a narrow interpretation of § 3742(a)(1). *See United States v. Plouffe*, 445 F.3d 1126, 1127–29 (9th Cir.2006); *Cooper*, 437 F.3d at 327–28.

■ Having rejected the government's jurisdictional argument based on *Colon*, we now must determine whether the sentence is reasonable. In *Fernandez*, we explained that "[r]easonableness review does not entail the substitution of our judgment for that of the sentencing judge. Rather, the standard is akin to abuse of discretion." *Fernandez*, 443 F.3d at 27. We ask only "whether the sentencing judge exceeded the bounds of allowable discretion, committed an error of law in

---

**2.** We note that in *Fernandez* and the numerous opinions penned by our sister circuits, the question presented was slightly different. In those cases, the question was whether there existed appellate court jurisdiction to review a within-Guidelines sentence for reasonableness. Although in this case Kane appeals from a below-Guidelines sentence, we find the distinction to be immaterial, particularly in light of *Booker's* parenthetical that the Sentencing Reform Act provides for appellate review "irrespective of whether the trial judge sentences within or outside the Guidelines range...." *Booker*, 543 U.S. at 260, 125 S.Ct. 738.

the course of exercising discretion, or made a clearly erroneous finding of fact." *Id.* (internal quotations marks omitted and alterations incorporated).

The District Court committed no such error here. The Judge considered the relevant sentencing factors in careful and reasoned fashion, premised his conclusions on a sound view of the facts, and understood the applicable legal principles. Kane merely renews the arguments he advanced below—his age, poor health, and history of good works—and asks us to substitute our judgment for that of the District Court, which, of course, we cannot do. *See id.*

For the reasons set forth above, we **AFFIRM** the judgment of the District Court.