[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 9, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-12706
Non-Argument Calendar
_____

D. C. Docket No. 04-00107-CR-FTM-29-DNF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISIDORO MARTINEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 9, 2006)**

Before TJOFLAT, CARNES and HULL, Circuit Judges.

PER CURIAM:

Isidoro Martinez appeals his 87-month sentence imposed after pleading

guilty to being an alien found in the United States without permission after having previously been convicted of an aggravated felony and removed from the United States, in violation of 8 U.S.C. § 1326(a), (b)(2). On appeal, Martinez argues that his 87-month sentence, within the guidelines range, was unreasonable and was imposed in violation of the Due Process Clause and the rule of Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000). After review, we affirm.

## I. BACKGROUND

### A. Plea Colloquy

Martinez pled guilty without a written plea agreement to the above unlawful re-entry charge. During the plea colloquy, Martinez admitted that on February 16, 1999, he had been convicted of battery on a law enforcement officer, a felony offense, in Hendry County, Florida and then deported. Thereafter, Martinez re-entered the United States without permission and, on November 27, 2003, was found in Collier County, Florida.

### B. PSI

The presentence investigation report ("PSI") set forth the following additional facts. On May 26, 1998, Martinez, a native of Mexico, was convicted of carrying a concealed firearm in Naples, Florida and was sentenced to 18 months' probation. On February 16, 1999, he was convicted of battery on a law

2

enforcement officer in Hendry County and placed on five years' probation. Martinez violated his probation on October 18, 1999, and was sentenced to 20 months in prison. While incarcerated, Martinez admitted that he had entered the United States illegally in 1995. Once his state prison sentence was completed, he was deported from the United States in 2001.

On November 27, 2003, Martinez was arrested in Naples, Florida for false imprisonment, battery, and criminal mischief and was convicted and sentenced to one year in jail on September 15, 2004. Before he was convicted and sentenced on the Naples charges, he was arrested again on January 6, 2004, for violating his probation in Hendry County and, on April 27, 2004, was sentenced to one year in jail. While in the Hendry County jail, Martinez admitted to being deported from the United States in 2001 and to re-entering without permission in March 2003.

The PSI assigned a base offense level of 8, pursuant to U.S.S.G. § 2L1.2(a), applicable to offenses involving unlawful entry into the United States. Pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), the PSI increased Martinez's base offense level by 16 levels because Martinez was previously deported after a conviction for a crime of violence, battery on a law enforcement officer. The PSI recommended a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a)-(b).

With regard to Martinez's criminal history, the PSI included the following offenses and corresponding points: (1) three points for an 18-month probation sentence, entered on May 26, 1998, for carrying a concealed firearm on February 14, 1998, and a 20-month prison sentence after his probation was revoked on October 18, 1999; (2) two points for a five-year probation sentence, entered on February 16, 1999, for battery on a law enforcement officer, not having a valid driver's license, and willful or wanton reckless driving on August 1, 1998, and a 12-month prison sentence after his probation was revoked on April 27, 2004; (3) two points for a 12-month prison sentence, entered January 14, 2000, for battery/domestic violence on May 22, 1999, when officers found Martinez's girlfriend, Maria Anzualda, with blood on her hands and neck from where Martinez had hit her in the head, arms, and legs with his boot; (4) two points for a 12-month prison sentence, entered January 14, 2000, for battery/domestic violence against his girlfriend Anzualda on September 25, 1999; and (5) two points for a 12-month prison sentence, entered September 15, 2004, for false imprisonment, battery, and criminal mischief on November 27, 2003, when a witness reported seeing Martinez beat his then-girlfriend, Maria Espinosa-Echavarria.

These criminal convictions resulted in a subtotal criminal history score of 11. Two points were added because Martinez was on probation for the felony

4

battery on a law enforcement officer when he committed the instant offense.  See U.S.S.G. § 4A1.1(d) (stating that two points are added to the defendant's criminal history score if he "committed the instant offense while under any criminal justice sentence, including probation").   Thus, Martinez's total criminal history points amounted to 13, which established a criminal history category of IV.

With a total offense level of 21 and a criminal history category IV, the PSI recommended an advisory guidelines range of 77 to 96 months' imprisonment.  Martinez had no factual objections to the contents of the PSI.  Martinez's sole written objection to the PSI was to contend that his criminal history category of IV was overstated, warranting a downward departure.  Martinez did not dispute that he had the above convictions, but only that they overstated his criminal history.

## C.    Sentencing

At the sentencing hearing, Martinez reiterated that he did not object to the facts stated in the PSI and also stated that he had no objections to the PSI's application of the guidelines.  Martinez withdrew his request for a downward departure, explaining that he had determined that his request was actually an "argument for additional mitigation in light of Booker," and instead argued for a sentence outside the guidelines range.  In so doing, Martinez acknowledged that his criminal history had been "technically correctly scored," but argued that "with one

5

or two exceptions, all of the criminal history relat[ed] to charges that involve[d] Ms. De Pilar Espinosa," Martinez's fiancee.

Martinez explained that Espinosa-Echavarria was present to testify that the reports were exaggerated. Martinez explained further that Espinosa-Echavarria had tried to persuade the state to drop the charges of false imprisonment and that Martinez pleaded guilty to the charges because he had done so in the other cases against him. Martinez suggested that his criminal history, put in context, was not as severe as represented by the guidelines sentence. Espinosa-Echavarria then testified and only requested that the judge place Martinez in a facility as near to her as possible so that she could visit him while he was in custody.

The district court acknowledged that it could sentence Martinez outside of the guidelines range because the guidelines were only advisory and that "under the statute, the Court is supposed to impose a sentence that is sufficient, but not greater than necessary to comply with the statutory purposes of sentencing." However, the court explained that:

> [Martinez's] biggest problem is his criminal history. Not only is it at the top of the range for guideline purposes, I think [the government] is right, I mean, the common denominator for almost all of them is violence. And the fact that the victim, for whatever reason, doesn't seem to think that's going to be a problem in the future, it has been a problem in the past. He's carried firearms before. He's gotten into problems with police officers.
> I guess I have a hard time seeing why a sentence outside the

6

guidelines would be appropriate.

I see a number of people who are here illegally, from other countries. Typically, to work. That's not your client. If it is, he's committing crimes much more frequently than is typical for this kind of person.

I'll be glad to hear from you, but, I mean, I look at his record, and I see a violent man who is not supposed to be here. And his criminal history – you may be right, but for his violence against the witness, he might have had two or three points. But he was violent. He did those things. He had firearms. I have a real hard time seeing that a sentence outside the guidelines is appropriate.

The court asked Martinez if he had any additional objections, and Martinez responded that he had none. Martinez was sentenced to 87 months' imprisonment, the middle of the guidelines range, and three years' supervised release.

## II. DISCUSSION

### A. Jurisdiction

The government, as a threshold matter, points out that Martinez does not challenge any application of the guidelines or the ultimate calculation of his guideline range of 77 to 96 months. Because Martinez's sentence was within a correctly-calculated guidelines range, the government contends that this Court lacks jurisdiction under 18 U.S.C. § 3742 to review the reasonableness of Martinez's sentence. We disagree.

First, post-Booker, this Court repeatedly has reviewed sentences within the guidelines range for unreasonableness. See, e.g., United States v. Talley, ___ F.3d

7

___, No. 05-11353, 2005 WL 3235409 (11th Cir. Dec. 2, 2005); United States v.

Scott, 426 F.3d 1324 (11th Cir. 2005); United States v. Winingear, 422 F.3d 1241

(11th Cir. 2005).   Second, although Booker excised the standards of review in 18

U.S.C. § 3742(e), the Supreme Court explained that "the [Federal Sentencing] Act

continues to provide for appeals from sentencing decisions (irrespective of whether

the trial judge sentences within or outside the Guidelines range in the exercise of

his discretionary power under § 3553(a))," and cited 18 U.S.C. § 3742(a).[1]  United

States v. Booker, 543 U.S. 220, ___, 125 S. Ct. 738, 765 (2005) (instructing

appellate courts to review a sentence for "unreasonableness" in light of the factors

set forth in § 3553(a)).

Although the Supreme Court in Booker did not identify which provision of §

3742(a) provided for appeals for "unreasonableness," we conclude that a post-

Booker appeal based on the "unreasonableness" of a sentence, whether within or

_____

[1]Specifically, § 3742(a) provides a defendant may appeal his sentence if that sentence:
　　　(1) was imposed in violation of law;
　　　(2) was imposed as a result of an incorrect application of the sentencing guidelines; or
　　　(3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or
　　　(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.
18 U.S.C. § 3742(a).

outside the advisory guidelines range, is an appeal asserting that the sentence was imposed in violation of law pursuant to § 3742(a)(1). See United States v. Frokjer, 415 F.3d 865, 875 & n.3 (8th Cir. 2005) (holding that Booker did not alter the rule that a district court's discretionary decision not to depart downward is unreviewable, but noting that, after Booker, the court will "review a defendant's argument that even a sentence within the advisory guideline range is 'unreasonable' with regard to the factors set forth in 18 U.S.C. § 3553(a), and an unreasonable sentence would be imposed 'in violation of law' within the meaning of § 3742(a)") (citation omitted).[2] Thus, this Court has jurisdiction under § 3742(a)(1) to review sentences for unreasonableness.

## B.    Reasonableness

Having determined that we have jurisdiction, we now consider Martinez's reasonableness challenge to his sentence. To do so, we review Martinez's final sentence, in its entirety, for unreasonableness in light of the factors in § 3553(a). See Winigear, 422 F.3d at 1245 ("We do not apply the reasonableness standard to each individual decision made during the sentencing process; rather, we review the final sentence for reasonableness.").

---

[2]This appeal does not challenge a district court's refusal to grant a motion for a downward departure under the guidelines. Although Martinez initially requested a downward departure, he withdrew this request at sentencing.

We easily conclude that Martinez's 87-month sentence is not unreasonable. First, the 87-month sentence was within the guidelines range and was almost one-third the length of the twenty-year statutory maximum sentence. Martinez admitted twice entering this country unlawfully, once after being deported. He has repeatedly violated his probation and has committed additional offenses while on probation. As the district court noted, many of his prior convictions involved violence.

In addition, the record does not support Martinez's contention that the district court applied the guidelines range in a presumptive manner. Rather, the district court acknowledged that, based on the advisory nature of the guidelines, it could sentence Martinez outside the guidelines range and that "under the statute, the [district court] is supposed to impose a sentence that is sufficient, but not greater than necessary to comply with the statutory purposes of sentencing." Furthermore, the district court's deliberations reflect consideration of several § 3553(a) factors, apart from the guidelines range. In any event, "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." Scott, 426 F.3d at 1329.

Martinez's argument that his criminal history was disproportionately

10

emphasized likewise fails. Martinez admitted that his criminal history had been correctly scored. Furthermore, contrary to Martinez's claim in his brief, Espinosa-Echavarria did not testify at the sentencing hearing that those offenses were false or exaggerated. Espinosa-Echavarria's testimony consisted only of a request that the judge place Martinez in a facility as near to her as possible so that she could visit him while he was in custody.

In short, nothing in the record convinces us that Martinez's sentence was unreasonable in light of the § 3553(a) factors.

## C.     Martinez's Constitutional Claims

On appeal, Martinez for the first time raises arguments that his sentence violated the Due Process Clause and the principles of Apprendi and Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004). We review his newly-raised constitutional arguments for plain error. United States v. Fields, 408 F.3d 1356, 1360 (11th Cir.), cert. denied, 126 S. Ct. 221 (2005).[3] Here, we find no error, plain or otherwise.

First, Martinez's constitutional arguments are premised, in part, on the assumption that his uncharged prior convictions cannot be used to increase his

---

[3]We correct plain error where (1) there is error, (2) that is plain, (3) that affects substantial rights, and (4) seriously affects the fairness, integrity or public reputation of judicial proceedings. Fields, 408 F.3d at 1360.

statutory maximum sentence or his guidelines range. Martinez acknowledges that his position conflicts with Almendarez-Torres v. United States. See Almendarez-Torres v. United States, 523 U.S. 224, 247, 118 S. Ct. 1219, 1233 (1998) (concluding that prior convictions need not be pled in an indictment or proved to a jury beyond a reasonable doubt to trigger enhanced statutory maximums under 8 U.S.C. § 1326). Martinez argues that Almendarez-Torres has been undermined by subsequent Supreme Court decisions such as Apprendi, Blakely, Booker, and, most recently, Shepard v. United States, __ U.S. __, 125 S. Ct. 1254, 1262-63 (2005). While those recent decisions "may arguably cast doubt on the future prospects of Almendarez-Torres's holding regarding prior convictions, the Supreme Court has not explicitly overruled Almendarez-Torres. As a result, we must follow Almendarez-Torres." United States v. Camacho-Ibarquen, 410 F.3d 1307, 1316 n.3 (11th Cir.), cert. denied, 126 S. Ct. 457 (2005). Therefore, Apprendi and Blakely did not preclude the district court from enhancing Martinez's sentence based on uncharged prior convictions.[4]

Second, this Court has already rejected the due process arguments Martinez

---

[4]Martinez also argues for the first time on appeal that, because his prior convictions were used to increase his base offense level under U.S.S.G. § 2L1.2(b)(1)(A) and also to determine his criminal history points, they were impermissibly double counted. This argument has already been rejected by this Court in United States v. Wimbush, 103 F.3d 968, 970 (11th Cir. 1997), and thus has no merit. There certainly is no error that is plain.

12

makes.  See United States v. Duncan, 400 F.3d 1297, 1307 (11th Cir.), cert. denied, 126 S. Ct. 432 (2005) (concluding that the defendant's due process rights were not violated where, at the time the defendant committed the offense, the United States Code and the guidelines advised the defendant of the statutory maximum sentence and "that a judge would engage in fact-finding to determine his sentence and could impose up to" the statutory maximum sentence).[5]

At the time Martinez committed his offense in 2003, 8 U.S.C. § 1326(b)(2) advised Martinez that, if he was convicted of being found in the United States after having been convicted of an aggravated felony and then removed from the United States, he was subject to a sentence of up to twenty years' imprisonment.  As in Duncan, the guidelines at the time informed Martinez that a judge would engage in fact-finding to determine his sentence and could impose a sentence up to twenty years.  18 U.S.C. §§ 3551 et seq.; Duncan, 400 F.3d at 1307.  Therefore, under Duncan, Martinez had sufficient warning at the time that he committed his offense that a potential consequence was a twenty-year sentence, and his due process rights were not violated.

---

[5]Martinez contends that retroactive application of Booker's remedial holding increased the sentence authorized by his guilty plea from the maximum under mandatory guidelines to the maximum permitted by statute, and thus operated as an ex post facto law that violated his due process right to fair warning of the criminal penalties he faced.  This same argument was rejected in Duncan.  See Duncan, 400 F.3d at 1307.

13

For all of these reasons, we affirm Martinez's 87-month sentence.

**AFFIRMED**.