[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 16, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-11920
Non-Argument Calendar

_____

D. C. Docket No. 04-00042-CR-OC-10-GRJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SAMUEL HILL,
a.k.a. Prat,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(March 16, 2006)**

Before DUBINA, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Samuel Hill appeals his conviction, imposed pursuant to a jury verdict, and 240-month sentence for conspiracy to possess with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846, and distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). On appeal, he argues: (1) the evidence was insufficient to support his convictions, and (2) his 240-month sentence, which was imposed after the district court considered factors enumerated in 18 U.S.C. § 3553(a) and was below the applicable 292 to 365 months' advisory Guidelines range, was unreasonable under United States v. Booker, 543 U.S. 220 (2005).[1] After thorough review of the record and careful consideration of the parties' briefs, we affirm.

We review the sufficiency of the evidence de novo, viewing the evidence and drawing all reasonable inferences in favor of the jury's verdict. See United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005). We must affirm Hill's convictions unless there is no reasonable construction of the evidence from which the jury could have found the appellant guilty beyond a reasonable doubt. Id. We review the district court's interpretation of the Sentencing Guidelines de novo and

---

[1]We have jurisdiction to review the reasonableness of Hill's sentence, pursuant to 18 U.S.C. § 3742. See United States v. Martinez, 434 F.3d 1318 (11th Cir. 2006) (rejecting government's threshold argument that this Court lacks jurisdiction under 18 U.S.C. § 3742(a) to review a sentence within a correctly-calculated guideline range for reasonableness; concluding that "a post-Booker appeal based on the 'unreasonableness' of a sentence, whether within or outside the advisory guidelines range, is an appeal asserting that the sentence was imposed in violation of law pursuant to § 3742 (a)(1)" (emphasis added)).

2

its factual findings for clear error. See United States v. Jordi, 418 F.3d 1212, 1214 (11th Cir.), cert. denied, 126 S. Ct. 812 (2005). After the district court correctly calculates the advisory Guidelines range,[2] the court may impose a sentence that falls outside the Guidelines range, which we are obliged to review for reasonableness. Jordi, 418 F.3d at 1215. Our reasonableness analysis is guided by the factors enumerated in 18 U.S.C. § 3553(a). See United States v. Winingear, 422 F.3d 1241, 1245-46 (11th Cir. 2005). And our "[r]eview for reasonableness is deferential." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both th[e] record and the factors in section 3553(a)." Id.

The relevant facts are straightforward. On October 14, 2004, Hill was charged by a superceding indictment with conspiracy to possess with intent to distribute 50 grams or more of crack cocaine between 1999 and 2002, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 (Count 1), and two counts of distribution of crack cocaine, based on sales that occurred on May 15, 2003 and May 16, 2003, both in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Counts 2 and 3). Hill pled not guilty and proceeded to a jury trial.

---

[2]Hill does not challenge the district court's calculation of the advisory Guidelines range.

3

During the government's case-in-chief, Willie Lee Brown, who testified pursuant to a plea agreement, stated that he sold crack cocaine to Hill from sometime in 1999 through December 2002. His early sales to Hill occurred two or three times per week and each consisted of between three-and-a-half and seven grams of crack cocaine. In each of the last sales, which occurred twice a week during the months of October, November, and December of 2002, Brown sold Hill about four ounces of crack cocaine. Brown never saw Hill use the drugs himself, and the amounts and frequency of his sales to Hill resulted in a larger amount than an individual user would buy. In some of the sales, the crack cocaine was cut up and ready for distribution when sold to Hill.

Bruce Leneal Norflee, who also testified pursuant to a plea agreement, stated that he and Hill entered into an agreement whereby he would sell crack cocaine to Hill. About three or four times a week during 1999 to 2002, Norflee sold between a quarter of an ounce and one ounce of crack cocaine to Hill. Notably, Hill told Norflee that he was selling the drugs to people where he worked.

Robert Randall Moody testified that he was paid by the Drug Enforcement Administration ("DEA") to make undercover drug buys over a period of about three years. In May 2003, he made two purchases of crack cocaine from Hill. On May 15, 2005, Moody was in Hill's neighborhood when Hill approached Moody's

4

car. Moody initially indicated he wanted to purchase $200 worth of crack cocaine. Hill proceeded to produce a cake pan with crack cocaine in it and sold Moody $400 worth of the crack. Moody testified that he returned to the area on the following day, May 16th, and purchased more crack cocaine from Hill, in an amount that Moody could not remember.

Moody identified a videotape of himself and Hill during the cocaine purchase and sale on May 15, 2003. The video was played for the jury during Moody's testimony. The government also introduced a transcript of the conversation heard on the videotape. Moody explained that the actual purchase and sale took place out of the viewing of the video camera. As for the May 16th transaction, the video camera malfunctioned so that there was no recording of that purchase and sale.

Finally, Lake County Sheriff's Lieutenant Jerry Montalvo testified that he received information from Brown, Norflee, and others that Hill was distributing crack cocaine in Umatilla, Florida. Lieutenant Montalvo stated that the drug transaction partially depicted in the videotape occurred on May 15, 2003.

After the government rested, Hill moved for judgment of acquittal, which the district court denied, and did not call any witnesses or present any evidence. The jury returned a verdict finding Hill guilty of conspiracy to possess with intent

5

to distribute 50 grams or more of crack cocaine and distribution of crack cocaine on May 15, 2003, but not guilty of the remaining count of distribution of crack cocaine on May 16, 2003. Hill proceeded to sentencing.

The presentence investigation report ("PSI") recommended a base offense level of 38, pursuant to U.S.S.G. § 2D1.1, and no adjustments. With a total offense level of 38 and a criminal history category III, Hill faced an advisory sentencing range of 292 to 365 months' imprisonment. During the sentencing hearing, defense counsel indicated that the only objection he had to the PSI was a factual correction regarding one of Hill's prior convictions, but noted that it did not affect the criminal history score. The court corrected the PSI to reflect the requested change and then adopted the factual allegations and Guidelines calculation in the PSI, noting that the Guidelines range was merely advisory. Defense counsel also recognized that Hill was subject to a 10-year mandatory minimum sentence, but argued that he deserved a sentence below the advisory Guidelines range. In support of mitigation, Hill's parents both made statements describing Hill's home life. Hill was then living with his second wife and their five-month-old baby and two other young children. Hill also had two other children from a previous marriage, for whom he consistently made child support payments.

Prior to imposing sentence, the district court observed that Hill's case was very serious because it involved the distribution of 4.5 kilograms of crack cocaine, but was unusual because there was nothing in Hill's background to suggest his involvement in this type of activity. The court further noted the following factors supporting mitigation: (1) Hill's prior offenses were primarily traffic-related; (2) he had made substantial child support payments over many years; (3) he had remained steadily employed; and (4) he had a diminished likelihood of recidivism due to his age. The court found that a sentence below the advisory range was warranted and imposed a sentence of 240 months' imprisonment to be followed by a four-year term of supervised release. This appeal followed.

First, Hill challenges the sufficiency of the evidence to support his convictions. His primary arguments concern the credibility of the government's witnesses.[3] He argues that Moody's testimony was suspect because of his criminal record and the fact that he was paid by the DEA for his cooperation and testimony. Likewise, he asserts that Brown and Norflee could not be believed because they

---

[3]We reject Hill's other challenges to the sufficiency of the evidence, which include that (1) the videotape admitted at trial did not show a drug deal and had the wrong date on it; (2) there was no evidence that Hill had any assets, even though drug dealers make a lot of money; (3) there were no phone records to corroborate testimony about phone conversations; and (4) there was no fingerprint, voice print, or cassette tape evidence at trial. We are satisfied that under a reasonable construction of the evidence, drawing all inferences in favor of the jury's verdict, the jury could find guilt beyond a reasonable doubt.

testified pursuant to plea agreements with the government, in the hopes of receiving reductions in their own sentences.

It is well-established that credibility determinations are the sole province of the jury. United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997), modified on other grounds by United States v. Toler, 144 F.3d 1423, 1427 (11th Cir. 1998). "The fact that [a witness] has consistently lied in the past, engaged in various criminal activities, [and] thought that his testimony would benefit him . . . does not make his testimony incredible." United States v. Cravero, 530 F.2d 666, 670 (5th Cir. 1976).[4] Rather, for testimony to be considered incredible as a matter of law, "it must be unbelievable on its face, i.e., testimony as to facts that [the witness] could not have possibly observed or events that could not have occurred under the laws of nature." United States v. Rivera, 775 F.2d 1559, 1561 (11th Cir. 1985) (quotation marks omitted) (alteration in original). Put another way, "[i]t must be testimony as to facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature." Calderon, 127 F.3d at 1325 (quotation omitted). Moreover, judgment of acquittal is not required "because the government's case includes testimony by 'an array of

_____

[4]In Bonner v. Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on October 1, 1981.

scoundrels, liars, and brigands.'" United States v. Hewitt, 663 F.2d 1381, 1385 (11th Cir. 1981) (citation omitted).

The jury, by its verdict, found the testimony of the government's witnesses credible. Brown and Norflee testified that they sold large amounts of crack cocaine to Hill on a weekly basis for an extended period of time. Notably, Norflee testified that Hill said he was selling the crack cocaine to others. Moreover, Moody testified to the May 15th sale of crack cocaine and the jury viewed a videotape and transcript of that transaction. All three of these witnesses were extensively questioned on direct and cross-examination regarding their self-interest, including their plea bargains. Moreover, the plea bargains and unreliability of the witnesses also were thoroughly explored and discussed during defense counsel's closing argument. Finally, the district court's instructions to the jury included the following:

> The testimony of some witnesses must be considered with more caution than the testimony of other witnesses.
>
> For example, a paid informer, or a witness who has been promised that he or she will not be charged or prosecuted, or a witness who hopes to gain more favorable treatment in his or her own case, may have a reason to make a false statement because the witness wants to strike a good bargain with the Government.
>
> So, while a witness of that kind might be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses.

Simply put, none of Hill's arguments show that the witnesses for the government presented testimony that was unbelievable on its face or contained facts or events that could not possibly have occurred. The jury reasonably could conclude, beyond a reasonable doubt, that Hill conspired to possess with intent to distribute and did distribute the crack cocaine as charged in Counts 1 and 2. Thus, the district court did not err by denying Hill's motion for judgment of acquittal based on insufficient evidence.

Hill also challenges his 240-month sentence as unreasonable, arguing that the circumstances supported a less severe sentence and a downward adjustment from the advisory Guidelines range in an amount greater than the sentence that he got, which was 52 months below the Guidelines range. In support of this argument, he highlights the mitigating evidence, which _was_ considered by the district court, including: (1) his age, which the district court found tended to diminish his likelihood to recidivate; (2) child support payments he made, totaling $11,144 for two children and $30,101 for two other children; (3) his consistent employment from 1993 to 2003 and eligibility for re-employment; (4) his background, which the district court found did not suggest involvement in this type of criminal activity; and (5) the fact that he was married, has three children living in his home, and was needed at home to provide for his family. Hill further argues

10

that the two co-conspirators who testified against him received sentences of 195 months' and 168 months' imprisonment -- a mitigating factor also argued at the sentencing hearing and considered by the district court. Lastly, he argues that if he was a large scale distributor of drugs, he would not have lived in impoverished conditions.

Reviewing Hill's final sentence, in its entirety, for unreasonableness in light of the factors in § 3553(a),[5] we find no error. See Winingear, 422 F.3d at 1245 ("We do not apply the reasonableness standard to each individual decision made during the sentencing process; rather, we review the final sentence for

---

[5]Relevant section 3553(a) factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) [what is required for a sentence sufficient, but not greater than necessary, to comply with] the need for the sentence imposed-
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant;

. . . .

(3) the kinds of sentences available;

. . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a).

11

reasonableness."). At the sentencing hearing, the district court acknowledged that, based on the advisory nature of the Guidelines, it could sentence Hill outside the Guidelines range. The court then enumerated the very factors Hill now highlights on appeal, as supporting a sentence 52 months below the Guidelines range. The district court's deliberations reflect consideration of several § 3553(a) factors, apart from the Guidelines range. See Martinez, 434 F.3d at 1322-23 (affirming appellant's sentence against reasonableness challenge and noting that the district court applied the Guidelines as advisory and its deliberations reflected a consideration of the 18 U.S.C. 3553(a) factors); United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005) (affirming sentence as reasonable and noting that the district court calculated the correct Guidelines range, treated the range as advisory, considered the § 3553(a) factors, and imposed a sentence at the low end of the Guidelines range). Plainly, the district court considered, among other things, (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the seriousness of the offense; and (3) the need to avoid unwarranted disparities. See 18 U.S.C. § 3553(a).

Because the district court correctly calculated the guidelines range, treated the range as advisory, took into account sentencing factors listed in § 3553(a), and

12

imposed a sentence <u>below</u> the advisory sentencing range <u>and</u> substantially below the statutory maximum, we readily conclude Hill's sentence is reasonable.

**AFFIRMED.**