[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-15104
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 22, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00109-CR-T-24-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOEL P. RUBEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 22, 2006)

Before DUBINA, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Joel Ruben appeals his sentence for embezzlement and embezzlement of

Veterans Administration ("VA") funds while acting as a fiduciary, in violation of

18 U.S.C. § 641 and 38 U.S.C. § 1601.  On appeal, he argues that his sentence was

unreasonable in light of the factors set forth in 18 U.S.C. § 3553(a). After careful review, we find no error and affirm.[1]

On March 16, 2005, Ruben was charged in a two-count indictment with embezzlement and embezzlement of VA funds while acting as a fiduciary for his mother, in violation of 18 U.S.C. § 641 and 28 U.S.C. § 1601. He pled guilty and proceeded to sentencing.

According to the presentence investigation report (PSI), Ruben's mother, Betty Werner, began receiving VA Dependency and Indemnity Compensation (DIC) in 1976 after the death of her first husband in World War II. In 1995, Werner was placed in an institution due to severe mental problems, at which time Ruben obtained a durable power of attorney, placing him in a fiduciary relationship with his mother. Over the next eight years, Ruben sent approximately ten letters to the VA, all of which were purportedly signed by his mother and directed the

---

[1]Because we find no error based on the district court's § 3553(a) analysis, we need not, and do not, reach the issue of whether there was plain error.

As for the government's jurisdictional argument, we have jurisdiction to review the reasonableness of Ruben's sentence, pursuant to 18 U.S.C. § 3742. See United States v. Martinez, 434 F.3d 1318 (11th Cir. 2006) (rejecting government's threshold argument that this Court lacks jurisdiction under 18 U.S.C. § 3742(a) to review a sentence within a correctly-calculated guideline range for reasonableness; concluding that "a post-Booker appeal based on the 'unreasonableness' of a sentence, whether within or outside the advisory guidelines range, is an appeal asserting that the sentence was imposed in violation of law pursuant to § 3742 (a)(1)"). Pursuant to our well-established prior-precedent rule, this panel is bound to apply, and may not reconsider Martinez. See United States v. Marte, 356 F.3d 1336, 1344 (11th Cir. 2004) (discussing prior-precedent rule).

deposit of DIC benefits into Ruben's various bank accounts. Ruben never used any of this money to make payments to the facility caring for his mother, who died in July 2004.

Sometime in late 2003, the VA began an investigation into the possible misappropriation of Werner's DIC payments. After providing a series of conflicting explanations as to the whereabouts of the DIC payments, Ruben eventually admitted that he had used the money to pay off his own financial obligations and to care for his ill son. He also admitted that he received approximately $800 per month for nearly ten years. According to VA financial records, the total amount of misappropriated funds was $86,402.

The PSI recommended a base offense level of 6, under U.S.S.G § 2B1.1(a)(2), and the following adjustments: (1) an 8-level enhancement based on the amount of money embezzled, U.S.S.G. 2B1.1(b); (2) a 2-level enhancement because his mother qualified as a vulnerable victim within the meaning of U.S.S.G. § 3A1.1(b)(1); (3) a 2-level enhancement for violation of a position of private trust, pursuant to U.S.S.G. § 3B1.3; and (4) a 3-level decrease for his acceptance of responsibility, under U.S.S.G. § 3E1.1(b). With an adjusted offense level of 15 and a criminal history category VI (based on 17 criminal history points resulting from numerous prior financial crimes and the offense of falsely accusing his

3

former stepdaughter of child neglect and abuse), Ruben faced a Guidelines range of 41-51 months' imprisonment. There were no objections to the PSI.

At the sentencing hearing, the district court confirmed that there were no objections to the factual basis or the calculations of the PSI and then provided defense counsel the opportunity to argue in support of a mitigating sentence. Counsel asserted that Ruben suffered from severe physical and psychological problems and highlighted that he was caring for a very sick child. Counsel urged the court to impose a sentence consisting of mandatory mental health treatment, restitution payments, "some type of employment compensation," and no prison time. The district court inquired for more details about these factors and solicited the following additional facts from Ruben and his lawyer: (1) that his son had cancer in the eye, but did not live with Ruben who had not paid child support since June 2003; and (2) that Ruben suffered from diabetes, high blood pressure, and cataracts. The government argued for a high-end sentence.

The district court stated that it had reviewed the PSI, to which there were no objections, and considered the parties' arguments, as well as "the advisory guidelines" and "3553, the need for punishment, the protection of the community, the offense itself." The court then concluded that in light of all of its considerations, "a sentence within the advisory guidelines is an appropriate

4

sentence" and imposed a 48-month term of imprisonment, followed by 3 years of supervised release. The court also ordered Ruben to pay $86,402 in restitution. This appeal followed.

Ruben asserts that his sentence was unreasonable because the district court did not adequately consult some of the factors listed in 18 U.S.C. § 3553(a). He makes various arguments, some that he raised in the district court and others that he raises for the first time here, in support of mitigation. We are unpersuaded by any of them.

Our reasonableness review is guided by the factors in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220, 261 (2005); United States v. Winingear, 422 F.3d 1241, 1245 (11th Cir. 2005). And our "[r]eview for reasonableness is deferential." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both th[e] record and the factors in section 3553(a)." Id. These factors include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

. . . .

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Although sentencing courts must be <u>guided</u> by these factors, "nothing in <u>Booker</u> or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." <u>United States v. Scott</u>, 426 F.3d 1324, 1329 (11th Cir. 2005); <u>United States v. Robles</u>, 408 F.3d 1324, 1328 (11th Cir. 2005) (stating that, post-<u>Booker</u>, district courts need not conduct an accounting of every § 3553(a) factor and expound on how each factor played a role in the sentencing decision).

Based on our careful review, with particular attention to the sentencing transcript and the PSI, we readily conclude that Ruben's sentence is reasonable. The district court explicitly stated that it had consulted § 3553(a) prior to imposing a sentence that fell <u>within</u> the advisory Guidelines range. <u>Cf. Talley</u>, 431 F.3d at 788 (observing that "when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one").

Before announcing its sentence, the court heard Ruben's arguments, which pertained to "the nature and circumstances of the offense and the history and characteristics of the defendant," within the meaning of § 3553(a)(1), since they concerned Ruben's ill son, his own medical concerns, and his remorse and desire for rehabilitation. Moreover, in imposing sentence, the district court highlighted Ruben's long history of economic crime and the nature of the offense and its victim. See § 3553(a)(2) (discussing factors pertaining to need for sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant"). Finally, the parties' arguments and the PSI's calculations outlined "the kinds of sentences available," as discussed in § 3553(a)(3). On this record, Ruben's sentence was reasonable.

**AFFIRMED.**