[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 27, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14763
Non-Argument Calendar

_____

D. C. Docket No. 07-10006-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GERARDO TAPANES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 27, 2008)**

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Gerardo Tapanes appeals his 60-month sentence for failure to obey an order by authorized federal law enforcement officers to heave to a U.S. Coast Guard ("USCG") vessel, in violation of 18 U.S.C. § 2237(a). First, Tapanes argues that the district court violated his First Amendment rights by considering the obscene hand gesture that Tapanes made to USCG authorities, in order to enhance his sentence ten-fold. Second, Tapanes argues that his above-Guidelines' sentence is unreasonable in light of the 18 U.S.C. § 3553(a) factors because the court unjustifiably replied upon only one of the factors, namely the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. For the reasons set forth more fully below, we affirm.

A presentence investigation report ("PSI") was prepared after Tapanes entered a guilty plea. According to the PSI, the USCG cutter Tornado encountered a go-fast vessel, which had its navigational lights turned off, 27 nautical miles north of Cuba. After the Tornado commanded the go-fast vessel to stop, the vessel continued in a northerly course at approximately 30 nautical miles per hour and a lengthy chase ensued. The PSI noted that "[d]uring the chase, the go-fast vessel's operator, later identified as Gerardo Tapanes, immediately energized the vessel's navigation lights, signaled an obscene hand gesture (his middle finger), and attempted to ram his vessel into the . . . Tornado." When the Tornado was within

2

20 yards of the go-fast vessel, it hailed the vessel in English and Spanish, telling the vessel to "Stop, this is the [USCG]." Tapanes maneuvered the go-fast vessel directly at the Tornado at one point, which created a collision situation. After a 23-nautical mile chase, Tapanes finally stopped the go-fast vessel, and he and his passenger surrendered. In his post-arrest statement, Tapanes indicated that he believed he was being chased by the Cuban Coast Guard and denied making any hand gestures. The probation officer calculated a Guidelines range of zero to six months based upon an adjusted offense level of eight and a criminal history category of I.

At the sentencing hearing, Tapanes objected to the PSI's fact that he had made a hand gesture to the USCG. Tapanes claimed that he was merely shading his eyes because the USCG was shining a light on his vessel. The district court stated,

> . . . his behavior during a one-and-a-half hour chase for 23 nautical miles, both his hand gesture and his maneuvering in front of the [USCG] vessel, are matters that concern me in terms of considering a reasonable sentence and the statutory factors about promoting respect for law and those other factors set forth in 3553.
>
> And my recollection, at least from the information contained in the PSI, was that he was in very close proximity to the [USCG] vessel when he made his gesture. And I want to give him the benefit of the doubt if, in fact, there is some misunderstanding there. . . .

The government stated that it could bring one of the USCG officers in to testify

about what the officer witnessed concerning the obscene gesture.  The court indicated that it was prepared to give Tapanes the benefit of the doubt, but if the witness testified "that it was a very clear and unambiguous obscene gesture, then [Tapanes's] testimony before [the court] today to the contrary concerns [the court] even more."  The court indicated that it would like the government to bring the witness in because "[i]t's a difference between six months and 60 months."  The court continued the hearing.

When the sentencing hearing continued, USCG Senior Chief Barry White testified that the pursuit of Tapanes's vessel was "one of the most violent pursuits [he had] been involved in," and that there was no doubt in his mind that Tapanes had made an obscene gesture toward the USCG.[1]

The district court stated that it believed an above-Guidelines sentence was appropriate in part due to Tapanes's conduct concerning the chase.  After the court indicated that it had considered the statements of all parties, the PSI "which contains the advisory [G]uidelines and the statutory factors," it imposed a 60-month sentence.  The court asked for final objections, and Tapanes objected to the reasonableness of the sentence "in light of the statutory maximum, the fact that Mr. Tapanes entered a guilty plea, and all of the other factors which we enumerated

---

[1] On cross-examination, White acknowledged that the pursuit was extremely dangerous in large part because of the rough condition of the sea.

4

during the course of this hearing."

I.

Because Tapanes failed to object to his sentence on the ground he now raises in his first issue on appeal, we review his constitutional argument for plain error only. United States v. Martinez, 434 F.3d 1318, 1323 (11th Cir. 2006). Under a plain error analysis, a defendant must show "(1) error, (2) that is plain, and (3) that affects substantial rights." United States v. Cotton, 535 U.S. 625, 631, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002) (citations and internal quotation marks omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (citation and brackets omitted).

"The First Amendment . . . provides that 'Congress shall make no law . . . abridging the freedom of speech,'" and it affords protection to symbolic or expressive conduct as well as to actual speech." Virginia v. Black, 538 U.S. 343, 358, 123 S.Ct. 1536, 1547, 155 L.Ed.2d 535 (2003). "The hallmark of the protection of free speech is to allow 'free trade in ideas'-even ideas that the overwhelming majority of people might find distasteful or discomforting." Id.

In Dawson v. Delaware, 503 U.S. 159, 160, 112 S.Ct. 1093, 1095, 117

5

L.Ed.2d 309 (1992), the Supreme Court held that "the First and Fourteenth Amendments prohibit[ed] the introduction in a capital sentencing proceeding of the fact that the defendant was a member of an organization called the Aryan Brotherhood, where the evidence [had] no relevance to the issues being decided in the proceeding." 503 U.S. at 160, 112 S.Ct. at 1095. Prior to sentencing, Dawson and the government agreed to a stipulation regarding the Aryan Brotherhood evidence, which, among other things, provided that "the Aryan Brotherhood refers to a white racist prison gang that began in the 1960's in California." Id. at 162, 112 S.Ct. at 1096. During the penalty hearing, the prosecution read the stipulation and introduced evidence that Dawson (1) had a tattoo on his hand that read "Aryan Brotherhood" and (2) referred to himself as "Abaddon," which apparently meant "one of Satan's disciples." Id. at 161-63, 112 S.Ct. at 1095-96. The jury recommended that Dawson be sentenced to death, and the Supreme Court of Delaware affirmed the sentence. Id. at 163, 112 S.Ct. at 1096.

The Supreme Court stated in Dawson that "the Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." Id. at 165, 112 S.Ct. at 1097. The Supreme Court noted that its cases had emphasized that "the sentencing authority has always

6

been free to consider a wide range of relevant material," and "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." Id. at 164, 112 S.Ct. at 1097 (citations omitted). The Supreme Court noted that it had upheld the consideration of constitutionally protected material in certain cases, including: (1) "in a capital sentencing proceeding, of evidence of racial intolerance and subversive advocacy where such evidence was relevant to the issues involved"; and (2) in a non-capital sentencing proceeding, to impeach a defense witness by showing bias. Id.; see also Wisconsin v. Mitchell, 508 U.S. 476, 489, 113 S.Ct. 2194, 2201, 124 L.Ed.2d 436 (1993) (explaining that "[t]he First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent"). Nonetheless, the Supreme Court determined that, because the "narrowness of the stipulation left the Aryan Brotherhood evidence totally without relevance to Dawson's sentencing proceeding, . . . Dawson's First Amendment rights were violated by the admission of the Aryan Brotherhood evidence in this case, because the evidence proved nothing more than Dawson's abstract beliefs." Dawson, 503 U.S. at 165-66, 112 S.Ct. at 1097-98. The Supreme Court noted that "Delaware might have avoided this problem if it had presented evidence showing more than mere abstract beliefs on Dawson's part, but

7

on the present record one is left with the feeling that the Aryan Brotherhood evidence was employed simply because the jury would find these beliefs morally reprehensible." Id. at 167, 112 S.Ct. at 1098.

The district court did not plainly err by considering Tapanes's obscene gesture during the sentencing phase because the gesture was relevant to sentencing and was but one of many factors the court relied upon. The court noted that Tapanes had initially stated that he did not make any hand gesture to the USCG officials and had not even turned around in the direction of the USCG, but he later stated that, although he did turn around, he put his hand up to block the light from the USCG vessel. Thus, in light of his own contradictory testimony,[2] as well as the testimonial evidence from the USCG officer, whether or not Tapanes made the hand gesture was relevant to Tapanes's sentencing because it reflected upon Tapanes's history and characteristics, and, specifically, Tapanes's lack of respect for the law and his propensity to lie. See 18 U.S.C. § 3553(a)(1), (a)(2)(A). Therefore, the court did not consider Tapanes's abstract beliefs for the irrelevant and impermissible purpose of demonstrating his general moral reprehensibility. See Dawson, 503 U.S. at 165-66, 112 S.Ct. at 1097-98. Accordingly, Tapanes's First Amendment rights were not violated during sentencing, and there was no

---

[2] In contrast to his previous positions, Tapanes now admits that he did in fact obscenely gesture the crew of the USCG.

8

error, much less plain error.

## II.

"'In reviewing the ultimate sentence imposed by the district court for reasonableness, we consider the final sentence, in its entirety, in light of the § 3553(a) factors.'" United States v. Valnor, 451 F.3d 744, 750 (11th Cir. 2006) (citation omitted). The party challenging the reasonableness of a sentence "bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

"In reviewing the reasonableness of a sentence imposed after conviction, we [normally] review de novo, as a question of law, whether a factor considered by the district court in sentencing a defendant is impermissible." United States v. Velasquez Velasquez, 524 F.3d 1248, 1252 (11th Cir. 2008). "A sentence that is based entirely upon an impermissible factor is unreasonable because such a sentence does not achieve the purposes of § 3553(a)." United States v. Lorenzo, 471 F.3d 1219, 1221 (11th Cir. 2006).

The Supreme Court recently clarified the reasonableness standard as a review for abuse of discretion. Gall v. United States, 552 U.S. —, 128 S.Ct. 586, 594, 169 L.Ed.2d 445 (2007). Appellate courts should "take into account the

9

totality of circumstances, including the extent of a deviation from the Guidelines range." Id., 128 S.Ct. at 597. We will remand for resentencing only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008) (quotation marks omitted). Specifically, the district court must impose a sentence that is both procedurally and substantively reasonable. Gall, 128 S.Ct. at 597.

> When reviewing the sentence for procedural reasonableness, we must
>
> ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range.

Id.

"In considering the substantive reasonableness of the sentence, we may not apply a presumption of unreasonableness where a sentence is outside of the Guidelines range, and we must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." United States v. Livesay, No. 06-11303, slip op. at 1912 (11th Cir. Apr. 23, 2008)

10

(citations and quotation marks omitted). However, "Gall makes clear that 'it also remains true that the district court's choice of sentence is not unfettered.'" Id. (citation omitted). "[T]he district court is obliged to consider all of the § 3553(a) factors, and those factors in turn guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." Id. (citations and punctuation marks omitted). Moreover, the district court "must consider the extent of the deviation [from the Guidelines range] and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 128 S.Ct. at 597.

Because we review for substantive unreasonableness under the "totality of circumstances," "a district court need not discuss each Section 3553(a) factor, although where the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so." Pugh, 515 F.3d at 1191 n.8 (internal citations and punctuation marks omitted). "[A] district court's unjustified reliance on any one Section 3553(a) factor may be a symptom of an unreasonable sentence." Id. at 1191. However, such a sentence is not necessarily unreasonable. See Gall, 128 S.Ct. at 602 (holding that a district court did not commit reversible error simply because it "attached great weight" to one factor). "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district

court." United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007) (quotation omitted).

The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to afford adequate deterrence, to promote respect for the law, to provide just punishment for the offense, to protect the public, and to provide the defendant with needed educational or vocational training or medical care; (3) the kinds of sentences available; (4) the advisory guidelines range; (5) pertinent Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims.  18 U.S.C. § 3553(a)(1)-(7).

Initially, Tapanes argues for the first time on appeal that the district court procedurally erred when it considered an impermissible factor (his hand gesture) in sentencing him.  As discussed above, the gesture was relevant to the § 3553(a) factors.  Thus, the court did not plainly err by considering that factor.

Tapanes's assertion in his brief that his sentence is per se unreasonable because the court failed to follow procedural safeguards akin to those when a sentencing court applies an upward departure is misplaced and without legal support.  See Gall, 128 S.Ct. at 597 (defining the procedural safeguards a court

12

must conduct during sentencing).  In addition, although it may be true, as Tapanes asserts in his brief, that the court could have applied an enhancement under § 3C1.2 for reckless endangerment during flight, it is also true that the court could consider the conduct independently while conducting its § 3553(a) analysis.  See United States v. Amedeo, 487 F.3d 823, 833-34 (11th Cir.), cert. denied, 128 S.Ct. 671 (2007) (holding that "it was reasonable for the district court to rely on certain aspects of Amedeo's conduct, particularly his abuse of the attorney-client relationship, that it had already considered in imposing an enhancement" in making its determination of whether to impose an upward variance in light of the factors set forth in § 3553(a)).

Further, contrary to Tapanes's assertions otherwise, the record does not support Tapanes's contention that the court unjustifiably relied upon any one § 3553(a) factor, and, although the court may have attached great weight to Tapanes's conduct surrounding the chase, it does not follow that his sentence was necessarily unreasonable.  See Gall, 128 S.Ct. at 602; Clay, 483 F.3d at 743; Pugh, 515 F.3d at 1191.  The district court adequately explained, based upon the § 3553(a) factors and the circumstances in this case, why it varied above the Guidelines range.  See Livesay, No. 06-11303, slip op. at 1912; Pugh, 515 F.3d at 1191 n.8.  Moreover, in light of the dangerous situation that Tapanes created

13

during the lengthy chase, as well as Tapanes's demonstrated disrespect for the law, the court's reasons were sufficiently compelling to support the degree of upward variance. See Gall, 128 S.Ct. at 597.

Thus, Tapanes has not shown that his 60-month sentence, which did not exceed the statutory maximum of 5 years' imprisonment, was unreasonable in light of both the record and the § 3553(a) factors. See Talley, 431 F.3d at 788; United States v. Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005) (comparing, as one indication of reasonableness, the actual prison term imposed against the statutory maximum); see also 18 U.S.C. § 2237(b).

In light of the foregoing, the district court did not plainly err by considering Tapanes's obscene hand gesture along with all of the surrounding circumstances of the chase during the sentencing phase. Tapanes created a dangerous situation, showed disrespect for the law and for the safety of all concerned. He then falsely denied what he had done and attempted to deceive the court. The sentence imposed is not unreasonable.

Accordingly, Tapanes's sentence is AFFIRMED.